UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Christopher Dionne<br>Plaintiff | ) )<br>) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| United States Navy<br>Defendant | )<br>) |

**RECEIVED**

AUG 2 5 2023

Wendy R Oliver, Clerk
U.S. District Court
W.D. OF TN, Memphis

## COMPLAINT

Illegal Indefinite Suspension without pay and allowances, using false and misleading information, obstructing justice, defaming character and denial of all legal rights.

From:  Mr. Christopher Dionne
        7467 High Seas Dr
        Millington TN  38053
        901-873-1623
        Chr892@hotmail.com
To:     UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TENNESSEE

Subject: Illegal Indefinite Suspension without pay and allowances, using false and misleading information, obstructing justice, defaming character and denial of all legal rights.

Encl: (1) MEMORANDUM FOR THE RECORD (MFR) dated 26 June 2019
Encl: (2) Executive Director's Email dated August 7, 2019
Encl: (3) VOLUNTARY STATEMENT dated 4 Oct 2019 at 1458
Encl: (4) Security Incident Report ICO Christopher E. Dionne, Civilian (GS-12) dated 7 Oct 2019
Encl: (5) SUSPENSION OF ACCESS ICO CHRISTOPHER DIONNE 4035 dated 8 Oct 2019
Encl: (6) NOTICE OF PROPOSED INDEFINITE SUSPENSION dated 9 Oct 2019
Encl: (7) JPAS Suspension Documentation dated 2019/10/10, 10 Oct 2019
Encl: (8) 30 Day Calendar Suspension dated 10 Oct 10
Encl: (9) NETC Office of General Counsel (OGC) Email dated 15 October, 2019
Encl: (10) NETC OGC Email dated October 23, 2019
Encl: (11) MR. CHRISTOPHER E. DIONNE REPLY TO SUSPENSION OF ACCESS dated 24 Oct 2019

Encl: (12) DECISION ON PROPOSED INDEFINITE SUSPENSION dated 31 Oct 2019
Encl: (13) DELIVERY TO MR. CHRISTOPHER E. DIONNE OF THE DECISION OF APPEAL OF
PROPOSED INDEFINITE SUSPENSION dated 5 Nov 2019
Encl: (14) Case File
Encl: (15) Request for Medical Evaluation (Civilian) Re: Mr. Christopher Dionne 4035 dated 9
June 2020
Encl: (16) REQUEST FOR MEDICAL EVALUATION ICO MR. CHRISTOPHER E. DIONNE dated 23 Jul
2020
Encl: (17) NETC HRO email dated 6 Aug 2020
Encl: (18) NETC HRO Email dated 2 Feb 2021
Encl: (19) FREEDOM OF INFORMATION ACT APPEAL DON-NAVY-2021-003368 dated 15 Mar
2021
Encl: (20) Assistant Force Judge Advocate FOIA Response dated 11 November 2021
Encl: (21) Executive Director's (Dr. Sullivan) Response dated 14 April 2023
Encl: (22) FOIA Response dated 30 June 2023
Encl: (23) Email from Department Head, CDR Frank Ryan dated 16 Aug 2023
Encl: (24) Event Timeline
Encl: (25) Points of Contact

1. Abstract. On 8 October 2019, the Navy Recruiting Command (NRC) suspended my access to

classified material. In doing so, the NRC used **false and misleading statements** or lies to

suspend this access. After **denying** my legal right to review and reply to the material used

against me; **denying** the DoD process of conducting a Douglas Factor Analysis; and **denying** my

right to an appeal; the Navy Recruiting Command placed me into an Indefinite Suspension

Status without pay and allowances on/about 6 November 2019. On 3 February 2021, the

Defense Counter-Intelligence Security Agency (DCSA) reinstated my security clearance without

incident, and I returned to work

Throughout this ordeal, there were no security violations, no disciplinary actions, no charges, no

formal counselling, and no informal counselling's. Throughout my 30 years of Active/Reserve

service in the United States Marine Corps, and my approximately 14 years as a Civil Servant, I

have never been subject to any disciplinary action for any reason.

**The NRC's actions taken against me constituted malicious and illegal targeting**. The following numbered paragraphs will concisely state my case for full reimbursement of lost wages, Annual Leave, Sick Leave, Social Security, Thrift Saving Program and Pain and Suffering. I will present this case in chronological order and include all documentation and United States Code (USC) violations.

The NRC targeted me in three phases. The first phase was **character defamation**. This phase lasted from 8 May 2019 through 7 Oct 2019. The second phase was to suspend me without pay and allowances using **false and/or misleading statements**, and denying all my legal rights. This phase lasted from 8 Oct 2019 to 5 Nov 2019. The third phase was to **conceal, deceive and 'slow walk' and deny responses**. This phase began on 6 Nov 2019 and continues through the present time.

I contend that this case falls within the Jurisdictional venue of this court for the following reason(s). Violations of the following United States Codes (USC).

> 5 USC 7513          Cause and Procedure

> 18 USC Section 1001  Statements of Entries Generally

> 28 USC 4101          Defamation of Character

> 18 USC 4              Misprision of a Felony

I tried to resolve this ordeal as follows to no avail:

- ➢ Continuous communication with the Navy Recruiting Command beginning on 10 Oct 2019 and extending through the present

- ➢ Continuous communications with the Navy Education and Training Command's Office of General Counsel (OGC) beginning on 11 Oct 2019 and extending through the present

- ➢ Multiple Merit System Protection Board (MSPB) filings

- ➢ Multiple Office of Special Counsel filings (OSC)

- ➢ Multiple Congressional Inquiries

- ➢ Filing with the Navy's Inspector General (IG)

## Phase I

2. Enclosure (1) was a NRC's Memorandum for the record (MFR) describing an alleged incident where I followed my former Supervisor, Ms. Patricia Hickman, to her car and starred at her. Neither the NRC Leadership nor the NRC Security Manager confronted me about this alleged incident. **This alleged incident never happened.** Enclosure (22) proves there was no investigation. I have been addressing this issue for over four years, including filing two targeting complaints. There have been no responses. I discovered this alleged incident through a FOIA request. The NRC used this incident in a Security Incident Report to suspend my access to classified material yet withheld disclosing the 7 Oct 2019 Security Incident Report to me. I am still addressing this MFR. USC violations:

> ➤ 18 USC Section 1001, False and/or Misleading Statements (including concealment)

> ➤ 28 USC § 4101(1) Character Defamation

> ➤ 18 USC 1519 Obstruction of Justice

3.  Enclosure (2) was the NRC's Executive Director' Email describing another alleged event where I repeatedly chanted 'EXERCISE EXTREME CONTROL" in the NRC Headquarter' s hallway upon the sight of my former supervisor Ms. Patricia Hickman.  Neither the NRC Leadership, nor the NRC Security Manager ever confronted me about this alleged incident.  Yet, the NRC placed this alleged incident into the 7 Oct 2019 Security Incident Report used to suspend my access to classified material while failing to disclose this alleged incident to me.  I am still addressing this issue.  Ms. Patricia Hickman's statements to the NRC violated USC:

> ➤ 18 USC Section 1001, False and/or Misleading Statements NRC

> ➤ 28 USC § 4101(1) Character Defamation

4.  Enclosure (3) is a sworn legal statement.  The wording is the same as the wording in Enclosure (2).  Thus, I contend that 'Patti' or Patricia Hickman mentioned in Enclosure (2) submitted this legally sworn document.  Neither the NRC Leadership nor the NRC Security Manager ever confronted me about this yet used it as material to suspend my access to classified material.  Further, Enclosure (22) shows there was neither an investigation nor any verification regarding Enclosure (3).  I am still addressing this issue.  I contend that making a

false and/or misleading statement to a legal and/or a security agency is a **felony** IAW 18 USC Section 1001. Further, if the NRC knew this was untrue, thus a felony, then I am accusing the NRC of Misprision of a felony. USC violation:

> ➤ 18 USC Section 1001 False and Misleading Statement
>
> ➤ 28 USC 4101 Character Defamation
>
> ➤ 18 USC 4 Misprision of a felony

5. Enclosure (4) is the 7 Oct 2019 Security Incident Report that contained the material used to support my suspension of access to classified material including Enclosures (1), (2) and (3). With the help of the Department of Navy's Chief Information Officer (DONCIO), I was finally able to get this material through FOIA on 11 November 2021. Thus, it took 765 days or 2.1 years to obtain this material. **The NRC refused and still refuses to disclose this material to me in direct violation of 5 USC 7513.** USC violation:

> ➤ 5 USC 7513
>
> ➤ 18 USC Section 1001 (Concealment)
>
> ➤ 28 USC 4101 Character Defamation

## Phase II

6. Enclosure (5) is the memorandum that suspended my access to classified material. On Tuesday afternoon, 8 Oct 2019, after 1700, Captain Michael Moran escorted me into the N1 Conference Room, where Mr. Steve Hickman the NRC Security Manager, was waiting. Afterwards, Mr. Steve Hickman read Enclosure (5) to me, while Ms. Patricia Hickman, my former Supervisor, remained in her office. Neither Captain Moran nor Mr. Steve Hickman presented any charges. Both Captain Moran and Mr. Steve Hickman refused to answer any questions regarding facts and/or evidence mentioned in Enclosure (5). Notice the wording in Enclosure (5), Paragraph (2), "Specific concerns include statements to coworkers that evidence your increasing hostility to your supervisors and leadership; **and statements and evidence that indicate you may cause or may be planning to cause physical harm in the Navy Recruiting Command workplace."** USC violations:

- ➢ 18 UCS Section 1001 (False and Misleading Statements)
- ➢ 18 USC Section 1001 (Concealment)

7. Enclosure (6) paragraph 4b states my right, "To review the material relied upon to support this proposed action (case file)." This never happened. To date, the NRC is still withholding this material. The Navy denied this **legal right** to me in direct violation of **5 USC 7513**. USC violation:

- ➢ 5 USC 7513

8. Enclosure (7) is the document that suspended my access to classified material in the Joint Personnel Adjudication System (JPAS). JPAS is the DoD's personnel security clearance database. Once an individual's clearance has been suspended in JPAS, that individual must go through the DoDCAF Security Adjudication process to have his/her security clearance reinstated. **This irreversible action was the 'de facto' decision to place me into an indefinite suspension status.**

9. I had to get the JPAS suspension document, Enclosure (7), through FOIA. The NRC did not disclose it to me. The NRC went straight to an indefinite suspension the day after NOTICE OF PROPOSED INDEFINITE SUSPENSION, Enclosure (6), without allowing me the legal right to review/reply to the material used to suspend me; to have a Douglas Factor Analysis and to appeal a decision.

10. Suspending me in JPAS, Enclosure (7), precluded me from exercising all my legal rights. Thus, if I repudiated the suspension reasons; was found innocent in a Douglas Factor Analysis; and successfully appealed the suspension, I would still be indefinitely suspended until a successful security adjudication. **Incidentally, the NRC suspended me in JPAS the same day I submitted my written response, Enclosure (8), and the day before my 11 Oct 2019 phone interview with the NRC's Executive.**

11. Thus, the NRC forced me into a position where I could either retire in disgrace with the loss of my security clearance or go through a lengthy security adjudication process. I chose the latter. **Accordingly, the NRC targeted me through the security adjudication process.**

12. Enclosure (8) was the written response to Dr. Sullivan's 11 Oct 2019 phone interview. It was my attempt to appeal the decision to indefinitely suspend me. However, there were no disciplinary actions, charges, security violations, formal counselling's, and/ or informal counselling's for me to address. Further, the NRC never disclosed (and still refuses to disclose) then 7 Oct 2019 Security Incident Report, Enclosure (4) to me IAW 5 USC 7513. **Again, the NRC irreversibly or indefinitely suspended me the day before on 10 Oct 2019.** This interview was a sham.

13. Enclosure (9) dated 15 Oct 2019, is an email from the Naval and Education Training Command (NETC) Office of General Counsel (OGC) to NETC Labor Employment Relations (LER) (apparently). In this email, the NETC OGC requests to see the case file including the Douglas Factor Analysis. Neither the NRC nor NETC LER performed the Douglas Factor Analysis. However, the NETC LER did not inform the NETRC OGC that I had been irreversibly or Indefinitely Suspended on 10 Oct 2029. To the best of my knowledge, the NETC LER did not respond to this email. USC violation(s):

  ➢ 18 USC Section 1001 (Concealment)

14. Enclosure (10) dated 23 Oct 2019, is an email from the NETC OGC to the NRC Executive Director (apparently) because it identifies the recipient as the Deciding Official. Dr. Kevin Sullivan the NRC Executive Director was the deciding official. In this email, the NETC OGC

wanted to discuss my communications with the command.  Dr. Sullivan never informed the

NETC OGC that I had already been irreversibly or Indefinitely suspended on 10 Oct 2019.  To the

best of knowledge Dr. Sullivan did not respond to this email.

> 18 USC Section 1001 (Concealment)

15. Enclosure (11) is the Memorandum for the Record where Dr. Sullivan states that, "I find that

Mr. Dionne did not present information in Oct 11th 2019, call or written letter that repudiates

the suspension of access.  What Dr. Sullivan fails to mention is that I had never been shown the

7 Oct 2019 Incident Report and that I had already been irreversible or Indefinitely on 10 Oct

2019.  **There was nothing to repudiate.**

> 18 USC Section 1001

16.  Enclosure (12) paragraph 2 states, "You were provided the specific reasons for the proposal

in reference (a) and you were afforded the opportunity to make an oral/or written reply."  If the

specific reasons meant the statements contained in Enclosure (5), then Enclosure (19) proves

that there were neither facts nor evidence to support the alleged specific reasons to suspend

my access to classified material.  **I could not reply to what did not exist.**

17.  Enclosure (12) signed by Dr. Sullivan, paragraph 3 states, "After careful consideration of

your reply and the record of information supporting the reason for the proposed suspension, I

find the basis for the indefinite suspension based on the suspension of your access to classified information to be fully supported." If the record of information was the 7 Oct 2019 Security Incident Report, Enclosure (4) then the NRC failed to disclose this to me. **I could not reply to what I never saw.**

> ➤ 18 USC Section 1001 (Concealment)

18. Enclosure (13) is the decision of the appeal. **However, Enclosure (22) proves that there was no appeal.** I contend that the NRC tried to deceive me into believing that the telephone 'interview' conducted on 11 Oct 2019 was the appeal. This was a **deceptive act** initiated by the NRC. I further contend, that the NRC tried to deceive me because I had been irreversibly suspended or indefinitely suspended on 10 Oct 2019. Even if I could successfully appeal the proposed decision, the indefinite suspension could not be reversed. At this point, I had to go through the DoDCAF Security Adjudication process.

> ➤ 18 USC Section 1001 (Concealment)

19. Enclosure (14) is the complete case file. Please notice that the NETC LER omitted the following documents:

- The 7 Oct 2019 Security Incident Report, Enclosure (4), **never disclosed**.
- The Douglas Factor Analysis **never performed.**

- The Appeal, **never performed**, the NRC tried to **deceive** me into believing that the 11 Oct 2019 Interview was an appeal.

### PHASE II

20. Enclosure (15) is the request for a medical evaluation. This was actually a psychological evaluation. In Enclosure (16), the Commander, Navy Recruiting Command (CNRC) admitted that, "Due to an administrative oversight and no fault of your own that caused a delay in the delivery of the notification, you were initially notified via Email, ref (a). Enclosure (17) thanks me for my efforts regarding the medical consent form. **There were two medical examination delays that extended my indefinite suspension by at least 123 days.**

21. Enclosure (18) informed me that I will be reinstated on 3 Feb 2021. DoDCAF reinstated my security clearance without incidence.

### PHASE III

22. Enclosure (19) is the Office of General Counsel's Freedom of Information Response to three previous FOIA requests DON-NAVY-2021 002417, DON-NAVY-2021-0023744, DON-NAVY-2021-002745. In DON-NAVY-2021-002745, I requested the facts and evidence for each statement made by Rear Admiral McLane in Enclosure (5). The (highlighted) response was "The IDA staff explained that no responsive records were found.' **In other words, there were no facts or**

**evidence to support my suspension of access to classified material.** At this point, without evidence and having been successfully adjudicated, I should have been compensated for all lost wages, time and benefits. Yet, the NRC and NETC LER did nothing. This is a critical FOIA response that proved my innocence.

23. Enclosure (20) is the Assistant Force Judge Advocate response to the material relied upon to make a decision (case file). The Assistant Force Judge Advocate response was "A search of our collective database located one "Security Incident Report ICO Mr. Christopher E. Dionne, Civilian (GS-12) of 7 Oct 19 conducted by Navy Recruiting Command Director of Security, N00 AT/SECM responsive to your request." **Thus, the NRC and NETC LER deliberately denied my legal right to review and reply to the materiel used to suspend my access to classified material.** This is a critical FOIA response that proved that neither the NRC nor NETC LER showed Enclosure (4) to me in direct violation of 5 USC 7513.

24. Enclosure (21) was the Executive Director's response to several questions I submitted. Please notice one the following responses," RESPONSE: You should expect that your actions and statements will continue to be reviewed utilizing the same rules, standards and policies as would the statements and actions any other NRC civilian employees in similar circumstances. It is Navy and NRC policy that any employee who has a security concern should forward such matters to their supervisor or the appropriate person(s) in their chain of command for review and appropriate action (**verification, investigation, etc.**). Evidence of your earlier actions and

statements were appropriately reported and were thereafter appropriately reviewed and acted on by command personnel.  The bold print is mine.

25.  The statement that "my actions and statements will be constantly reviewed," sounds threatening.  The phrase, "It is Navy and NRC policy that any employee who has a security concern should forward such matters to their supervisor or the appropriate person(s) in their chain of command for review and appropriate action (**verification, investigation, etc.**) establishes the requirement to conduct verify and investigate all such allegations.  The last statement states," Evidence of your earlier actions and statements were appropriately reported and were thereafter appropriately reviewed and acted on by command personnel."  What was the evidence?  There was no evidence.  What were the statements?  There were no statements.  This was targeting through false and misleading statements.   Also, there was an additional intention of deceiving me into believing that I did something wrong.  The Executive Director, and I believe the NETC Labor Employee Relations Depart, use generalizations to target GS Employees.  USC violations:

> ➢  18 USC Section 1001 (False and Misleading Statements)
> ➢  18 USC Section 1001 (Deception)

26.  Enclosure (22) proves that there were **no investigations** and/or **verifications** for either Parking Lot Incident, Enclosure (1) or the "Exercise Extreme Control" allegations, Enclosures (2), (3).  USC violation:

> ➢ 18 USC Section 1001

27. Enclosure (22) cast a shadow of doubt on Enclosure (21).  Please see my bolded comments.

28. Enclosure (23) was an email from CDR Ryan, my present new department head.  CDR Ryan stated how it came to his attention that I was using profanity in the workplace while wearing my headset.  He also mentioned that I was displaying aggressive behavior (not mentioned in the email).  **The NRC is still targeting me**.  Accordingly, I immediately filed a grievance and requested an investigation to determine what I said; when I said it; and how/when I showed aggression.  The NRC is honoring my request.  The investigation is pending.

29. Summary

- (2) 5 USC 7513 violations have been presented

- (12) 18 USC Section 1001 violations have been presented

- (4) 28 US 4101 violations have been presented

- (1) Misprision of felony violation has been presented.

- Evidence has been provided proving the NRC denied all my legal rights.

- Evidence has been provided proving that the Indefinite Suspension without pay and allowances was illegal and malicious targeting action.

- Evidence has been provided showing that the NRC is still targeting me.

- I submitted a reimbursement request on/about 20 January 2013. It has been over 210 days or approximately 7 months since submission. There has been no response.

30. Opinions

- That the NRC **illegally** uses the security adjudication process to target government service employees to remove that employee from federal service.
- That the NRC tried to **deceive** me into believing that all legal requirements were met.
- That the NRC and NETC LER purposefully and willfully **denied** all my legal rights to prevent me from repudiating the false, misleading, and targeted material used against me.
- That the NRC and NETC LER **purposefully** and **willfully** tried to **maximize** the **emotional**, **psychological**, and **financial** stress on me through malicious targeting, to get me to retire and/or resign.
- That the NRC and NETC LER have been maintaining their **targeting**, **concealment**, and **deceptive** practices for nearly four years.
- That the NRC and NETC LER purposefully and willfully **delay** and/or **refuse** to answer my documented correspondence in their efforts to exceed the statutes of limitations and/or to discourage me from taking administrative and legal actions.
- That the NRC **endangered** the safety and welfare of my family by the prolonged, concerted, malicious and illegal targeting efforts.

- That the NRC's **illegal** actions destroyed my career; defamed my character; and

  precluded me from any promotions.

31. Enclosure (24) is this ordeal's timeline that started 26 June 2019 and lasts thru today.

32. Enclosure (25) lists the points of contact.

33. Request(s)

- Compensation for all Pay and allowances, Rough Order of Magnitude (ROM)

  Calculations, listed below.

| Description | Metric | Notes | |
|---|---|---|---|
| Lost Wages | $113,750.00 | | Estimated |
| Adjusted Lost Wages | $130,530.74 | Compounded at 3.5% per year | Estimated |
| Lost TSP | $47,944.98 | | Estimated |
| Annual Leave Hours | 243 | | Estimated |
| Sick Leave Hours | 121 | | Estimated |
| Social Security | Unknown | | |

- Pain and Suffering Compensation

Considering the Navy's (NRC and NETC LER) endangerment to the safety and welfare of

my family, destruction of my career; defamation of my character; and the evidence listed above

caused by the prolonged, concerted, malicious and illegal targeting efforts I respectfully request

$5,000,000 in pain and suffering damages.

Respectfully Submitted,

Christopher Dionne
Christopher Dionne

Lieutenant Colonel USMC Ret.

7467 HIGH SEAS DR
MILLINGTON TN 38053
901-873-1623
CHR892@Hotmail.Com

Date 26 June 2019

MEMORANDUM FOR THE RECORD

Subj: CIVILIAN PERSONNEL INCIDENT ICO ▬ CHRISTOPHER DIONNE

1. On 26 June 2019, I was appointed to serve as interviewing officer by Commander, Navy Recruiting Command in order to gather additional insight into the incident involving ▬ Christopher Dionne and ▬▬▬▬▬▬ On 28 June 2019, I interviewed (b) ▬▬ ▬▬▬ (N5 Director) in her workspace. The following is a summary of the interview that followed and is accurate to the best of my knowledge.

2. I spoke with ▬▬▬ about her observations of personal and professional behavior of ▬ Dionne. ▬▬▬▬ commented that ▬ Dionne's behavior is extremely concerning; he seems to have issues with individuals in positions of authority (especially females). She made mention of a time where he commented to her that he is not going to be told to do anything by a female. He also on several occasions released emails/documents outside of the Department after directed not to do so. ▬▬▬▬ is also extremely concern for the safety of her personnel after ▬ Dionne made comments during a meeting that he used to be "armed" during briefings in IRAQ and he felt safer there then at CNRC, he consistently seen in their spaces just staring at others and has acted irrationally at times. ▬ Dionne also makes it a point to walk through the space occupied by ▬▬ ▬▬▬ when he leaves the Department work area vice utilizing the door 15 feet from his desk. She also described an incident where (b) Dionne waited in the parking lock for her, when she left (heading towards the Commissary) he followed her. She had to stop to answer her phone and motioned for him to pass; he stopped by the side of the car and just starred at her.

In general, ▬▬ ▬▬ believes ▬ Dionne is a disruptive force in her Department, displays disrespectful attitude toward supervisor. She feels that she as well as numerous others in the Department are fearful for their safety when ▬ Dionne is in the spaces.

Respectfully Submitted,

▬▬

1

Encl (1)

**CDR USN NAVOPSPTCEN PNS FL (USA)**

| | |
|---|---|
| **From:** | [b)(6)] D CIV USN (USA) |
| **Sent:** | Wednesday, August 7, 2019 4:19 PM |
| **To:** | [b)(6)] [b)(6)] CDR USN NAVOPSPTCEN PNS FL (USA) |
| **Cc:** | [b)(6)] CDR USN COMNAVCRUITCOM MIL (USA); [b)(6)] E CIV USN (USA) |
| **Subject:** | Workplace Concern |
| **Signed By:** | [blank].sullivan2@navy.mil |

Steve,

Patti [b)(6)] informed me of a recent encounter she experience with ▪ Chris Dionne in HQ hallways that caused her to fear for her safety in the workplace. Allegedly, ▪ Dionne became physically irritable in this encounter after seeing her in passing. According to [b)(6)] he tightly clutched his fist near his face, his skin complexion appeared to be deep red, and he stared straight ahead while verbalizing the words "EXERCISE EXTREME CONTROL, EXERCISE EXTREME CONTROL, EXERCISE EXTREME CONTROL". Please review this accusation as soon as possible and provide recommended courses-of-actions.

V/r,

▪

[b)(6)] [b)(6)]
Executive Director
Navy Recruiting Command
901-874-9005

For Official Use Only / Privacy Sensitive: Information contained within this document or its attachments may contain personal information, disclosure if which is generally prohibited by the Privacy Act (5 U.S.C. 552a). Release of such protected information outside of DoD is prohibited. Any misuse or unauthorized access may result in civil and criminal penalties.

1

 Encl ( 1)

| DEPARTMENT OF THE NAVY<br>**VOLUNTARY STATEMENT** | 1. PLACE: Bldg 784 Rm 132 |
| --- | --- |
| | 2. DATE/TIME: 4 Oct /1458 |

I ████████ ██████ ██████████, make the following free and voluntary statement to ██████ ████████ whom I know to be the CNRC Assistant Antiterrorism Officer. I make this statement of my own free will and without any threats or promises extended to me. I fully understand that the statement is given concerning my knowledge of *Mr Chris Dionne* ██████

In early August (on or about 7 Aug) I stepped out of my office to go to the passageway outside of the N5 office spaces. As I exited the workspaces, I was startled by Mr. Dionne, who was chanting "exercise extreme control, exercise extreme control" in an angry voice. When he noticed me, his arms and fists came up into a boxer's stance. While he did not move to strike me, the sheer anger in his voice and the fact that his initial reaction was to move into a fighting stance unnerved me. It bothered me so much that I spoke to N1, ATFP and ████████████ about it.

Q. DO YOU KNOW WHAT TIME OF DAY THIS HAPPENED?
A. Sometime in the mid-afternoon. ██

Q. DO YOU KNOW WHERE MR. DIONNE WAS COMING FROM?
A. No ██

Q. WAS HE OUT OF OFFICE THE MAJORITY OF THE DAY?
A. I don't recall. ██

Q. WHAT HAPPENED AFTER HIS FISTS CAME UP?
A. I was startled but no words were exchanged that I recall. I turned left and went to the ladies room. ██

SUBSCRIBED AND SWORN TO BEFORE ME
ON THIS _04_ DAY OF ___October___ 2019__ .

SIGNATURE

Oct 4 2019/ 1514
DATE/TIME

SIGNATURE

04 OCT 19 / 1514
DATE/TIME

PAGE 1 OF 1    INT. ██

Oath

Authority To Administer

Article 136 (b) UCMJ

OPNAV 5580/2 (10-07)                    SN 0107-IF-05502710                    ENCLOSURE (  )

Encl (8)

07 Oct 19

From:   Navy Recruiting Command Director of Security, N00 AT SECM
To:     Commander, Navy Recruiting Command
SUBJ:   Security Incident Report ICO ■ Christopher E. Dionne, Civilian (GS-12)

Ref:    (a) SECNAV M-5510.30; Chapters 7-9, Appendix' A & G

INITIAL REPORT TO
NRC, RESULTED IN
REVOCATION OF ACCESS
BY CNRC

Encl:   (1) Complaint from Dionne regarding ■■■ dated 20Feb19
        (2) Email from Dionne to ■■■ dated 18Apr19
        (3) Email from Dionne to ■ dated 18Apr19
        (4) Email from ■ to ■ dated 18Apr19
        (5) Memorandum of Interview with ■■ dated 08May19
        (6) NCIS Threat Management Strategy ■ Christopher Dionne
        (7) Email from ■■■ to NRC Director of Security dated 07Jun19
        (8) Witness Statement by ■■ dated 04Oct19
        (9) Email from Dionne to ■■ dated 17Jun19
        (10) Memorandum of Interview with ■■ dated 26Jun19
        (11) Memorandum of Interview with ■■ dated 26Jun19
        (12) Memorandum of Interview with Dionne dated 08Jul19
        (13) Memorandum of Interview with ■■ dated 08Jun19
        (14) Memorandum of Interview with ■■ dated 08Jul19
        (15) Complaint from Dionne regarding ■■ dated 24Jun19
        (16) Complaint from Dionne regarding ■■ dated 27Jun19
        (17) Complaint from Dionne regarding ■■ dated 08Jul19
        (18) Email from ■■ to NRC Director of Security dated 01Aug19
        (19) Email from ■■ to NRC Director of Security dated 07Aug19
        (20) Witness Statement by ■■ dated 04Oct19
        (21) Email from ■■ to NRC Director of Security dated 06Spe19
        (22) Email from Dionne to ■ dated 05Sep19
        (23) Email from Dionne to ■ dated 10Sep19
        (24) Email from Dionne to ■ dated 17Sep19
        (25) Complaint from Dionne regarding ■■ dated 19Sep19
        (26) Complaint from Dionne regarding ■■ Bonus dated 23Sep19
        (27) Appointment Order for Investigation into Possible PII Breach
        (28) Email from Dionne to ■■ dated 10Sep19
        (29) Mass Shooter Date Spreadsheet, Retrieved from Dionne's NMCI Account 02Oct19
        (30) Paper on Christian Martyrdom, Retrieved from Dionne's NMCI Account 02Oct19
        (31) - (53) Excepts from Dionne's Desk Log

1. Ref (a) requires commanding officers to continuously evaluate command personnel with regard to their eligibility for access to classified and/or assignment to a sensitive position. Per ref (a), the continuous evaluation check sheet lists 13 categories of security issues that must be reported to DoD CAF. Specific to this memorandum, ref (a), Exhibit 10A, paragraph 2.e identifies the following potential security concern: "conduct involving questionable judgement, untrustworthiness, unreliability, or unwillingness to comply with rules and regulations, or unwillingness to cooperate with security clearance processing.

2. The below information has been collated from various sources from 20Feb19 to 04Oct19 and portrays a pattern of behavior by ■ Christopher Dionne, CIV, GS-12, N5 that reflects potential questionable judgement, untrustworthiness, and unreliability. To alleviate any concern of bias, it should be noted that the Navy Recruiting Director of Security and author of this memorandum, ■■■■ has no familial or prior relationship with the Navy Recruiting N5 Department Head, ■■■■

   a. 20Feb19   Christopher Dionne submitted a draft complaint against his supervisor ■■■■

Encl (4)



to NRC Human Resources Representative ▮▮▮▮▮ alleging that ▮▮▮▮▮ had made false statements against him regarding a unprofessional phone conversation (Encl 1).

  b.  17Apr19  In an email exchange, DIONNE and ▮▮▮▮▮ argued about a leave request and a period of time unaccounted for in DIONNE's workday (Encl 2). DIONNE subsequently contacted ▮▮▮▮▮ requesting ▮▮▮ provide an effective alibi for the missing time (Encl 3). ▮▮▮ complied and emailed ▮▮▮▮▮ with the wording directed by DIONNE (Encl 4).

  c.  08May19  ▮▮▮▮▮ coworker to, DIONNE, informed ▮▮▮▮▮ the NRC Security Department, and NRC JAG of a statement made by DIONNE, to the effect of, "[DIONNE] was so frustrated, he could shoot the place up." NRC JAG conducted an interview with ▮▮▮▮▮ and annotated her statement in a Memorandum for the Record (Encl 5). DIONNE was subsequently temporarily debarred from NSA Mid-South and put on 10-days administrative leave. NCIS commenced an investigation.

  d.  14May19  NCIS Threat Assessment Unit (TAU) complete their investigation and provided a Threat Management Strategy regarding DIONNE (Encl 6). NCIS determined the following:

     (1) "Although at this time, the TAU does not opine that [DIONNE] poses an immediate concern for targeted violence, actions by Command may be necessary to prevent the situation from escalating."

     (2) Additionally, the TAU made the following recommendation, "Reporting indicates that DIONNE has expressed resentment towards his supervisor ▮▮▮▮▮ Command should encourage ▮▮▮▮▮ to remain vigilant for her personal safety and to report any suspicious behavior. If she is involved in any future disciplinary actions against DIONNE, that resentment may increase."

     (3) DIONNE was cooperative when interviewed by NCIS and voluntarily turned-over a single privately owned firearm, which was returned to him at the conclusion of the investigation.

  e.  28May19  ▮▮▮ ▮▮▮ ▮▮▮▮▮ reported to her contract company that DIONNE had made intimidating gestures and statements to the effect of cornering ▮▮▮ in her cubicle and demanding if she had made statements to ▮▮▮▮▮ in reference to not wanting to work with him. This incident resulted in a 26Jun19 command inquiry.

  f.  07Jun19  ▮▮▮▮▮ notified NRC N1 and security office of an unusual statement made by DIONNE, as reported by two other coworkers [▮▮▮ ▮▮▮ and ▮▮▮▮▮ to the effect of, "when I [DIONNE] was in Iraq, I would load my gun when I went into meetings and sit in the back of the room watching everybody. I was safer there than I am here" (Encl 7, 8).

  g.  17Jun19  DIONNE sent an email to DCNO N1 ▮▮▮ ▮▮▮▮▮ requesting ▮▮▮▮▮ send an email to ▮▮▮▮▮ to provide a statement on behalf of DIONNE. Specifically, DIONNE had advocated a specific analytical model to ▮▮▮▮▮ which ▮▮▮▮▮ subsequently instructed DIONNE to not use. DIONNE requested ▮▮▮▮▮ send an email to ▮▮▮▮▮ stating DIONNE never advocated the original model. (Encl 9).

  h.  26Jun19  Commander, Navy Recruiting Command appointed ▮▮▮▮▮ as investigating officer to determine the facts of the 28May19 incident. In subsequent interviews, during his investigation ▮▮▮▮▮ determined the following:

     (1) In an interview with ▮▮▮▮▮ on 26Jun19, he determined that DIONNE has an adversarial attitude towards female supervisors along with other anecdotal instances of unusual behavior (Encl 10).

     (2) In an interview with N5 Deputy Department Head, ▮▮▮▮▮ on 26Jun19, he determined

Encl (4)

aking appropriate actions" (Encl 21). There was no subsequent communication to ████████ indicating he form those actions would take. DIONNE also forwarded the same email chain to ██████ with a statement to the effect of, "Notice the tone" in relation to ██████ disciplinary email (Encl 22).

o.  10Sep19   DIONNE sent an email to ██████ with words to the effect of, "I am doing an internet search for the latest mass shootings to incorporate into my charge against ██ ██████ (Encl 23).

p.  17Sep19   DIONNE sent an email to ██████ indicating a perceived pattern of favoritism from ██████ towards women. Of note, the email included knowledge██████ receipt of a monetary bonus. In response, ██████ conducted a review of her employee documents and identified hat the paperwork relating to TABACCA's hiring and award bonus were missing (Encl 24).

q.  19SEP19   DIONNE provided ██████ a copy of a letter to Congressman Steven Cohen requesting a Congressional Investigation into ██████ The act of filing the complaint is not part of DIONNE's pattern of behavior. However, the language used and targeting of ██████ is consistent with DIONNE's previous behavior, to include the accusation that ██████ filed the initial threat indication on 08May19, that ██████ herself is now a potential threat for violence against others, reiteration of he accusation that ██████ is an opioid abuser, and words to the effect that, "painkillers may have been enough to fuel [██████ festering rage..." (Encl 25).

r.  23SEP19   In a letter from DIONNE to NRC Human Resources, DIONNE questioned the Awarding ██████ a $40,000 bonus. He alleged that awarding of the bonus as waste, fraud, and abuse and implied ██████ as the responsible party, using words to the effect of, "if it was arbitrary, hen it was relativistic to according to the hiring authority [██████ Additionally, the letter corroborates DIONNE's knowledge of hiring specifics, which were only contained on documents protected due to inclusion of PII (Encl 26).

s.  25SEP19   Commander, Navy Recruiting Command appointed ██████ as investigating officer to determine the facts of a potential PII breach based on the 17Sep19 report of missing employment documents (Encl 27).

t.  02Oct19   As part of his investigation, ██████ conducted a sweep of DIONNE's NMCI account to check for any documents containing PII unrelated to DIONNE's work. During the sweep, ██████ uncovered three suspicious documents: a 10Sep19 email from DIONNE to ██████ indicating he was investigating mass shootings (Encl 28), a self-generated spreadsheet of mass shootings conducted within the United States from 07May19 to 08Sep19 (Encl 29) and the other a paper of unknown authorship relating to the history of Christian martyrdom (Encl 30).

u.  DIONNE completes a daily work log, to which ██████ has access. The below excerpts, copied with concurrence of NRC JAG, detail additional data points concerning DIONNE's pattern of behavior.

(1) 04Jun19, statement to the effect, "You are just a GS12 (you are not important, you are a failure)" (Encl 31).

(2) On or about 04Jun19, a sketch of a masked individual with the title of "shhhhhh" (Encl 32).

(3) On or about 06Jun19, statement to the effect, "You are a failure. Your working life has been a failure. Do things right!" (Encl 33).

(4) On 06Jun20, statement to the effect, "Who do you want to be (safely)?" (Encl 34).

(5) On or about 26Jun19, statement to the effect, "Present self-image: loser, failure" (Encl 35).





▓▓▓▓▓ had partially witnessed the 28May19 incident. ▓▓▓▓▓ stated she saw DIONNE standing in a manner effectively blocking ▓▓▓▓▓ cubicle and making unusual comments about fishing. Upon DIONNE's departure, ▓▓▓▓▓ observed ▓▓▓▓▓ appeared uncomfortable (Encl 11).

(3) In an interview with DIONNE on 08Jul19, DIONNE stated he had approached ▓▓▓▓▓ in reference to feedback received during his recent end of the year appraisal in which ▓▓▓▓▓ alleged several N5 personnel had not wanted to work with him. DIONNE stated he was attempting to determine whether ▓▓▓▓▓ actually made similar statements. DIONNE stressed he never touched ▓▓▓▓▓ and that the references to fishing were merely a cordial gesture. Additionally, DIONNE stated he also confronted ▓▓▓▓▓ on three occasions about whether she made similar statements (Encl 12).

(4) In an interview with ▓▓▓▓▓ on 08Jul19, ▓▓▓▓▓ stated that the conversation regarding fishing only began upon ▓▓▓▓▓ s entrance into the workspace. ▓▓▓▓▓ also stated she feels uncomfortable in the workspace around DIONNE and departs her work area if left alone with DIONNE (Encl 13).

(5) In an interview with ▓▓▓▓▓ on 08Jul19, ▓▓▓▓▓ confirmed that DIONNE had asked her if she made comments about not wanting to work with him. ▓▓▓▓▓ confirmed she had, based on his aggressive behavior. ▓▓▓▓▓ additionally stated that she feels uncomfortable with DIONNE is in her space and a concern in potential escalation of DIONNE's behavior (Encl 14).

i. 24Jun19 DIONNE submitted a relocation request to Executive Officer Navy Recruiting Command. This letter was delivered to ▓▓▓▓▓ in an unsigned state. The letter serves to inform DIONNE's request for an IG investigation into a statement made by ▓▓▓▓▓ in the 17Jun19 email chain. DIONNE makes statements regarding ▓▓▓▓▓ to the effect of, "...▓▓▓▓▓ latest delusional statement..." and "I am going to the Veteran's Administration to learn how to deal with pathological liars (my opinion) and delusional individuals" (Encl 15).

j. 27Jun19 As an attachment to an email from DIONNE to ▓▓▓▓▓ DIONNE requested an interdepartmental transfer to get away from ▓▓▓▓▓ specifically citing the continuation of false accusations from ▓▓▓▓▓ The enclosed letter stated DIONNE intends to seek a court order of protection against ▓▓▓▓▓ and DIONNE claimed his belief that ▓▓▓▓▓ was the originator of the threat notification from 08Mau19. He further alleged ▓▓▓▓▓ as an opioid abuser (Encl 16).

k. 08Jul19 As an attachment to an email from DIONNE to ▓▓▓▓▓ DIONNE submitted a complaint against ▓▓▓▓▓ for false allegations in response to a recent mid-year performance review. The complaint summarizes DIONNE's rebuttal for the performance review (Encl 17).

l. 01Aug19 In an email regarding a Departmental team-building event, DIONNE made a statement that he would not be attending to the effect of, "Honestly, I don't think I am on the team. So, unless directed, I am not going to attend" (Encl 18). ▓▓▓▓▓ forwarded the email train to the NRC Security Department with the concern that DIONNE was further isolating himself within the command.

m. 07Aug19 NRC Executive Director, ▓▓▓▓▓ reported to the NRC Security Department that ▓▓▓▓▓ had made a complaint that DIONNE had passed her in the hallway. During this encounter his face turned a deep red, he clenched his fists and verbalized words to the effect of, "Exercise extreme control, exercise extreme control, exercise extreme control." (Encl 19, 20).

n. 05Sep19 In an email from ▓▓▓▓▓ to DIONNE, she addressed several performance issues regarding an assigned project. DIONNE's reply to ▓▓▓▓▓ was forwarded to the NRC Security Department due to the language used, to the effect of, "I [DIONNE] recognize your animas towards me and bias against me. I also recognize that you are trying to set me up to fail. Accordingly, I am now

*Encl (4)*

(23) On 30Sep19, statements to the effect, "Get a job outside the NRC earning 179,034" and "You do not want to work at the NRC anymore. You want a better job outside the NRC earning $179,034," "You hate the NRC. You want a better job," "You want to get beyond the basics," and "Focus" (Encl 53).

3. ■ Dionne displays an unusual pattern of behavior as a disgruntled employee, with potentially aggressive tendencies, and a blatant animosity towards his supervisor. The following recommendations are made solely in consideration of the potential risk to national security in relation to ■ Dionne's pattern of behavior. Any performance of conduct concerns should be taken up with the appropriate Human Resources department. Base on the guidance provided in ref (a), three courses of action are available in regards to ■ Dionne.

a. COA #1: Generate a finalized incident report in Joint Personnel Adjudication System (JPAS) for the purpose of documenting the 08May19 report that ■ Dionne may have made threatening statements to Navy Recruiting Command. Based on the nature of the report and NCIS determination, submission of the incident into JPAS is the minimum required action. Take no additional action.

b. COA #2: Generate an open incident report in JPAS for the purpose of documenting and reporting the pattern of behavior outlined within this memo for DoD CAF review. Allow member to retain access to sensitive information. Formally counsel member and issue a warning that additional indicators specified in ref (a), Exhibit 10A, may result in immediate suspension of access and/or revocation of security clearance eligibility. Take no additional action, pending DoD CAF adjudication.

a. COA #3: Generate an open incident report in JPAS for the purpose of documenting and reporting the pattern of behavior outlined within this memo for DoD CAF review. Suspend member's access to sensitive information and await DoD CAF determination. NOTE: Once "Suspend Access" has been executed in JPAS, it may not be reinstated until DoD CAF has made a determination.

4. Recommend strong consideration of COA 2, with potential for COA 3 when considering the scope of the pattern of behavior.

Encl (4)



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR.
MILLINGTON, TN 38054-5057

5510
Ser 00/687
8 Oct 19

MEMORANDUM

From: Commander, Navy Recruiting Command
To:    Mr. Christopher E. Dionne, CIV, GS-12, N5

Subj:  SUSPENSION OF ACCESS ICO CHRISTOPHER E. DIONNE, 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

Ref:   (a) DoDM 5200.02, procedures for the DoD Personnel Security Program (PSP) April 3,
           2017
       (b) Security Executive Agent Directive 4, National Security Adjudicative Guidelines,
           December 10, 2016 (Effective June 8, 2017)
       (c) SECNAV M5510.30, Personnel Security Program Manual

1.  Per references (a) through (c), your access to classified information and sensitive national security information systems have been suspended pending final adjudication of your eligibility by DoD Central Adjudication Facility (DoDCAF).

2.  This decision is made on the basis of facts now known to include a pattern of behavior by you that reflects potential questionable judgement, trustworthiness, and reliability.  Specific concerns include statements to co-workers that evidence your increasing hostility to your supervisors and leadership; and statements and evidence that indicate you may cause or may be planning to cause physical harm in the Navy Recruiting Command workplace.

3.  My decision to suspend your access to classified information and sensitive national security information systems has been made in the interests of national security as a result of my loss of confidence in your judgment, reliability, and trustworthiness and your willingness to comply with laws, rules and regulations.

4.  My point of contact in this matter is CWO3 Antonio D. Franklin, Navy Recruiting Command's Security Manager at (901)874-9432 or via e-mail:  antonio.franklin@navy.mil.

B. R. McLANE

Copy to:
NETC (OGC and SECM)
NRC (HR, N1, JAG and AT/SECM)
NCIS

"FOR OFFICIAL USE ONLY-PRIVACY SENSITIVE:  ANY MISUSE OR UNAUTHORIZED DISCLOSURE MAY
RESULT IN BOTH CIVIL AND CRIMINAL PENALTIES."

Encl (5)



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR.
MILLINGTON, TN 38054-5057

9 Oct 19

From: Director of Manpower, Navy Recruiting Command
To:   Mr. Christopher E. Dionne, Operations Research Analyst, GS-1515-12

Subj: NOTICE OF PROPOSED INDEFINITE SUSPENSION

Ref:  (a) 5 U.S.C. 7513
      (b) 5 C.F.R. 752
      (c) SECNAVINST 12752.1A
      (d) SECNAV M 5510.30
      (e) NRC Letter dated 8 October 2019

1.  In accordance with references (a) through (c), it is proposed to place you on indefinite suspension (non-duty, non-pay status) based on my decision to suspend your access to classified information pursuant to reference (d), Paragraph 9.6(4). My decision to suspend your access is based on information outlined in reference (e).

2.  In accordance with your position description (PD) as an Operations Research Analyst you hold a position that is designated as Non-Critical Sensitive that requires you to maintain eligibility for a security clearance and access to classified and sensitive national security information. Once access is suspended, your access cannot be reinstated unless the Department of Defense Consolidated Adjudications Facility (DoD CAF) renders a favorable eligibility determination. The U. S. Navy does not have a policy requiring reassignment of personnel to non-sensitive positions or duties upon suspension of access. I believe this proposal, if effected, will promote the efficiency of the service.

3.  If a decision to suspend you from duties without pay is reached, your suspension will remain in effect, without pay, until such time as a final adjudication of your eligibility for security clearance and assignment to a sensitive position is made pursuant to reference (d). If the final adjudication is a decision to deny your eligibility for a security clearance or assignment to a sensitive position you will remain on indefinite suspension, without pay, until the expiration of the notice period associated with any follow on administrative action initiated against you as a result of such final adjudication.

4.  In accordance with reference (a) you have the following rights:

    a.  To be represented by an attorney or other representative.

    b.  To review the material relied upon to support this proposed action (case file).

    c.  To answer this proposal both orally and/or in writing, and to furnish affidavits and documentary evidence, including medical evidence, in support of your reply. Your reply must be submitted within seven (7) calendar days of the date you receive this proposal. Your reply must be submitted to Dr. Kevin D. Sullivan, Executive Director, Navy Recruiting Command,

*Encl(6)*

Subj:   NOTICE OF PROPOSED INDEFINITE SUSPENSION

5722 Integrity Drive, BLDG 784, Millington, TN 38054.  To schedule an oral reply to Mr. Sullivan, you may call 901-874-9005.  Any response submitted within the specified time will be considered prior to a decision on this proposal.

5.   Upon request, you and/or your representative (if in a duty status) may be granted a reasonable amount of official time to review the case file, to prepare a written reply, and/or to make a personal reply to this notice.  You may be represented by an attorney or other representative when making your reply, but such designation must be in writing and signed/dated by you and submitted to Dr. Sullivan prior to making any reply.

6.   You will receive a written decision on this proposal as soon as after the time allowed for your reply.  If a decision is made to indefinitely suspend you, the action will not be effected sooner than thirty (30) calendar days from the date you receive this letter.

7.   Upon receipt of this letter, you are immediately placed on administrative leave, (leave with pay).  You are not to report to work unless directed to do so.  While on administrative leave, you are to contact Ms. Patricia Hickman at (901) 874-9221 or CAPT Moran at (901) 874-9461 every work day before 0800.  If Ms. Hickman or CAPT Moran are not available, you are to leave a message and a contact number where you can be reached.  You are to remain available during your normal working hours unless you request and are granted appropriate leave.  Failure to follow these instructions may result in you being placed in an absent without leave status (AWOL), which may be the basis for disciplinary action up to and including removal.

8.   I wish to advise you that the Department of the Navy Civilian Employee Assistance Program (DONCEAP) is available to assist you in the event there are personal problems affecting your performance.  You may contact an CEAP representative by calling 1 (844) 366-2327.  This information is provided for referral purposes only and is not intended to obligate the agency regarding reasonable accommodation issues.

9.   If you have any questions concerning this matter or to request a copy of the case file, you may contact Glen Colbert, Human Resources Specialist, at (850) 452-2670 or via email at glen.colbert@navy.mil.

M. P. MORAN
CAPT, USN

---

I acknowledge receipt of this letter. I understand my signature does not indicate my agreement with this action.  It only represents receipt of this notice on the date signed.

Employee signature                     191009
                                        Date

# CHRISTOPHER E. DIONNE

| | | | | |
|---|---|---|---|---|
| SSN: | [redacted] | DoD EDI PN: | 1019296659 |
| DOB: | [redacted] | Eligibility Level: | Secret |
| Place Of Birth: | UNKNOWN, NY, United States | Eligibility Determination: | Favorable made on 2021-02-03 by DoD CAF |
| Exception Code: | None | Open Investigation: | No |
| Supporting Investigation: | Tier 3R | NDA Signed Date: | 2005/05/23 |
| Incident Report: | | NDS Signed Date: | |

| Basic Info. | Other Subject Details | SMO Relationships | **Incidents** | Accesses | CSRs/RFAs | Subject Notes/Documents | Foreign |

## ▾ Incidents (5)

| Status ⇕ | Date ▾ | Type(s) ⇕ |
|---|---|---|
| Adjudication Completed | 2019/05/08 | Personal Conduct, Use of Information Technology |
| Adjudication Completed | 2019/05/08 | Use of Information Technology, Personal Conduct |
| Adjudication Completed | 2019/05/08 | Use of Information Technology, Personal Conduct |
| Adjudication Completed | 2019/05/08 | Use of Information Technology, Personal Conduct |

Incident Reported Date:    2019/10/10

Access Debriefed:    No

### Incident Notes (1)

- On or about 08MAY2019, a complaint was initiated about member making threatening comments in and toward the work place that subsequently re command and Administrative Leave. NCIS was then notified and commenced an investigation. As of 09OCT2019, the command has issued member been barred from the command. Update to follow via DISS.

### Incident Documents (0)

| Name ⇕ | Type ⇕ | Notes |
|---|---|---|

There are no associated incident documents.

End (7)

10 Oct 2019

From:   Christopher Dionne
To:       Executive Officer, Navy Recruiting Command

Reference (a): End-Of-Year Review Grievance
Reference (b): Courtesy Copy, Request for a Congressional Inquiry

Subject: 30 Calendar Day Suspension

1.  My goal is to 'get to the bottom' of these matters.  References (a) and (b) further amplifies my present situation.

2.  The following list false allegations made against me.  It is not all inclusive.

       a. Incident 1 (September 2018).  Speaking so loudly on the phone that my supervisor could hear me in the back of her office.  According to her charge, I was calling everyone stupid and I said I was worked with stupid people. I legally obtained the NRC's phone records.  There was no such phone call. The charge was dropped.  Ms. Hickman's excuse was that it must have been another day and another day.  Ms. Hickman was like a "hammer looking for a nail."  This incident indicated Ms. Hickman's true nature.

       Timeframe:       Shortly before the Mid-Year Review
       Accuser Known: Yes
       Charge Known: Yes
       Charge:            Unsubstantiated

       b. Incident 2 (8 May 2019).  Someone made an anonymous phone call to MSA Millington stating that I was going to come to work and shoot the place up.  However, I was at the dentist office.  The Naval Criminal Investigative Service (NCIS) came to my house; conducted an investigation and cleared me of any wrongdoing.

       Timeframe:       Shortly before the End-of-Year Review
       Accuser Known: No
       Charge Known: Yes
       Charge:            Unsubstantiated

*Encl (8)*

Subject: 30 Calendar Day Suspension

     c. Incident 3 (9 October 2019).  CNRC had a derogatory package on me. So, he signed it and sent it to DONCAF. I was never charged with anything, counselled and/or interviewed. I was never informed about my accusers. I was told that this was an administrative process; that I would be given 30 days paid Administrative Leave; that I had to sign two documents; and that I would be escorted by security out of the building.

     Timeframe:    Shortly before the Mid-Year Review
     Accuser Known: No
     Charge Known:  No
     Charge:       Pending

3.  After the noting the above and other unsubstantiated charges mentioned in my last End-of-Year Review, it is reasonable to expect the command to realize that it may have a problem other than me. Using DONCAF polices allowed the NRC to circumvent due process. A point to consider is that I do not deal with classified, sensitive, and/or For Official Use Only information. Another point is that if I were such a threat to National Security then why did the command wait until 1730 to escort me out of the building?

4.  DONCAF circumventing Due Process most likely applies to cases of employees acting irrationally and/or immediate threats to National Security. However, I do not believe that it negates Due Process.

5.  While I did not have an illustrative Career, I did serve for 30 years combined in the Active and Reserve Marine Cops components as both an Officer and Enlisted Marine. My positions included Executive Officer doe the Center of Analytics in the United States Space Command and Senior Marine Planner for Multi-National Forces-Iraq. As an overseas contractor I was a Senior Consultant for the Saudi Naval and Marine Forces, Recruiter for the New Iraqi Army and Facilities Manager for the New Embassy Complex, Iraq. As part of the Civilian Expeditionary Workforce (CEW) I served in Afghanistan as a Logistics Systems Analyst. In summary, I have been serving my country in and out of uniform for almost all of my adult life.

6.  Now to Examine Ms. Hickman's Motus Operandi. Although I have been told that the complaints did not originate in N5, the methods are comparable to what I have been experiencing in the past. Ms. Hickman builds a collection of exaggerated and imaginary actions then delivers them in an 'ambush' meeting.  In my opinion, she has neither leadership skills nor integrity.

*Encl (8)*

Subject: 30 Calendar Day Suspension

7. Next. I will address my computers habits since that seems to be an issue. First, I remove my CAC card from my computer when I leave the office. I usually leave in my machine when I am in the office expect if I will be away from my workstation for an extended period of time (i.e. Meeting in the N5 Conference Room). Headphone use is allowed. The following is my background listening itinerary.

a. AM
   1. Ambient Space music
   2. Ambient Space Music Approaching Mars
   3. Some contemporary music
b. PM (late afternoon motivation)
   1. Some contemporary music
   2. Charge of the Light Brigade (4:24 video)
   3. British Royal Marine Commando commercial
   4. Marines Hymn

8. Regarding personal habits, after many years of exercising on a heavy bag, I seriously strained my back. Moreover, last June I furthered strained my back while lifting weights. The result is I often look hostile at work while I readjust my upper torso to address back pain. This may seem like unusual behavior.

9. My projects for the past 2-3 months included:

a. Critical Element 1. Since there were no assignments, I completed a new interactive Enlisted Goaling Model. I submitted it to N5.
b. Critical Element 2. Since there were no assignments, Mr. Diggs (N3) and I with our Department Head approvals initiated a plan to repopulate the High School folders complete high school data and integrate that data into Sales Force with NALTS data NICHE (the supporting vendor) prepared a 10:03 NRC specific video, free of charge, for this command.
c. Critical Element 3. Centralized DEP Management, now OBE.

10. For the past four months, I submitted Employee Equal Opportunity Complaints (EEOC) to address a wide range of topics including:

a. Relocation request to do purposeful work where I could better serve the command.
b. Relocation request that proactively identifies this situation.

11. In summary, for the past year I have been the victim of false allegations from Gun Violence though a Threat to National Security.

Encl 18

12. My question is, "What does this command want me to do?" If the command wants me to retire, then I will give it consideration. If the command wants me to continue, then it should relocate me to where I could best serve as part of the Transformation process and avoid future situations such as this.

13. My contact information is (home) 901-873-1623, (email) chr892@hotmail.com.

Respectfully Submitted

Christopher Dionne
Christopher Dionne

Encl (8)

Addendum

14. After three days of 'soul searching,' I finally came up with something that might be causing this situation. For the past several weeks, I have been working with Mr. Diggs on a High Data, NALTS and Sales Force Integration task. Ms. Hickman was fully aware of this initiative. About 3-4 weeks ago, I asked Mr. John Byrd about NALTS data. Mr. Byrd informed me that Ms. Jennifer Kelly had charge of NALTS data. However, I never asked Ms. Kelly about the NALTS data. <u>I realized that NALTS data contained sensitive Navy Recruiting information and possible Personally Identifiable Information (PII) so I dropped the NALTS matter</u>. Next, I informed NICHE that the data was unavailable. Accordingly, NICHE built one dummy record and attached it to Sales Force as an example.

15. The 10:03 Niche video has been shown to CPO Noble, Aide to the National Chief Recruiter, Mr. Diggs and myself. It has also been offered to Ms. Hickman and Cmdr. Green. <u>There is no Navy Data on the video</u>. It is on my computer and available to the command. <u>I did not provide NICHE or anybody else with any Navy data whatsoever.</u>

16. Here is what I think happened. I believe that Ms. Kelly reported to Ms. Hickman that I was misusing NALTS data. Ms. Hickman often <u>wildly exaggerates</u> what she hears and <u>acts before thinking and/or communicating.</u> She did this before with Ms. Kelly. During my End-of-Year Review, Ms. Hickman wrote how Ms. Kelly was upset because her people told her that they were going to use a model I built. However, Ms. Kelly was not the Department Head at the time! Mr. Fodor, Ms. Jan Stuart Curry and Ms. Bush reviewed and liked the model. I think this is another example of Ms. Hickman's animus towards and bias against me.

17. If this was the issue, then a 5-minute conversation could have been an 'ounce of prevention.'

18. The only other time I worked with Navy specific data is when I built a concept model for Centralized DEP Management. About 3-4 months I built a concept model for this task. Thus, I downloaded Business Object (BO) data, deleted PII data and retained Rate (NUC-NF) and Ship Date information. Accordingly, the model could determine how many 'Deppers' would be available based on a pre-determined ship date.

19. So, my question is who is a Threat to National Security, an individual who purposefully protects sensitive data or people who fail to report immediately any alleged violation(s) and try to 'weaponize' such information for personal agendas?

Respectfully Submitted,

Christopher Dionne

*Encl(8)*



| | |
|---|---|
| **From:** | |
| **To:** | |
| **Subject:** | NPC - Christopher Dionne |
| **Date:** | Tuesday, October 15, 2019 11:25:17 AM |



Tag team buddy (…"Conspiracy Theory" brings the pain!)  I hope you had a good long weekend.  I believe Mr. Dionne provided an oral response to the XD at NPC on Friday.  When the XD prepares his MFR related to the response please share it.  I am keeping our file on this matter open until a decision is made and the decision letter is created, so please keep me in the loop as you engage with the XD and assist moving forward.  I would like to please see the case file, douglas factor analysis and decision letter drafts as they are being gathered/prepared and am standing by to assist/support.   Case file should be pretty straightforward I believe….access suspension statement of reasons, proposal letter, copy of employee's PD, Navy policy not requiring reassignment, any employee provided response, MFR for oral response….are you aware of anything else?   Thank you!

V/R,



Naval Education & Training Command

Office of Counsel (Code (b) (6)

250 Dallas Street

Pensacola, FL 32508-5220

Email: 

Telephone: 

Duty Cellular: 

Facsimile: 

CONFIDENTIALITY NOTICE

This e-mail and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you receive this e-mail in error, please immediately notify me at (850) 452-2054 and permanently delete the original copy and any other copy of the e-mail, and any printout thereof.

Encl(9)

| | |
|---|---|
| **From:** | ████████████████ |
| **To:** | ████████████████ |
| **Cc:** | ████ ████ |
| **Subject:** | FOR OFFICIAL USE ONLY - PRIVACY SENSITIVE - Christopher Dionne |
| **Date:** | Wednesday, October 23, 2019 3:48:12 PM |

FOR OFFICIAL USE ONLY - PRIVACY SENSITIVE:  Any misuse or unauthorized disclosure of this information may result in both criminal and civil penalties.

████████████

I am an ████████████ NETC and have been working on the matter involving Mr. Dionne's access suspension and proposed indefinite suspension.  I understand you are the Deciding Official and may have previously communicated with ████████ NETC HRO ████████ who is cc'ed on this message.  I would like to please speak with you regarding the decision process and Mr. Dionne's communications with the command, I understand Mr. Dionne's seven (7) day period to provide a response to the proposal has run and you are facing a decision.  Please let me know a time that is convenient, my contact information is below.  Thank you.

V/R,

████████████████

████████████

Naval Education & Training Command

Office of Counsel ████████████

250 Dallas Street

Pensacola, FL 32508-5220

Email: ████████████████

Telephone: ██████████████

Duty Cellular: ████████████

Facsimile: ████████████

CONFIDENTIALITY NOTICE

This e-mail and any attachments thereto, are intended only for use by the addressee(s) named herein and may

*Encl (17)*

24 Oct 19

MEMORANDUM for the RECORD

Subj:  MR. CHRISTOPHER E. DIONNE REPLY TO SUPENSION OF ACCESS

On October 11, 2019 Mr. Christopher E. Dionne submitted a verbal reply and written letter dated October 10, 2019.  Mr. Glen Colbert (NETC HRO, Labor and Employee Relations) participated in the October 11th call as a professional HR advisor.

I, Kevin D. Sullivan, begin the call by informing Mr. Dionne that no decisions would be render in the call and that my intent was to receive his information.  I informed him of my intent to take notes throughout the call.  Mr. Dionne acknowledged the terms prior to sharing the information he planned to present. Mr. Dionne begin by stating over the last year he has endured two suspensions.  One of the suspensions included alleged gun violence.  In noting the alleged gun violence he sighed "unbelievable".  He also stated Mr. Jamie Johnson inform him that he knew who made the alleged gun violence call.  According to Mr. Dionne, he told Mr. Johnson he did not want to know who did it.

Throughout the call with Mr. Dionne, he stated there has been numerous false allegations about him. Moreover, he believes the civilian mid-year and annual appraisal periods are triggering these negative events.  As an example, he stated the gun violence "shoot the place up" allegation was initiated around the end of year performance reviews.

Mr. Dionne requested to be separated from N5 Department; one hour meeting with NETC representatives, and an investigation into workforce harassment.  He stated he has plenty of documentation.  According to him, he is trying to find ways to serve the command better.

On the basis on all the facts, the Commander, Navy Recruiting Command suspended Mr. Dionne's access to classified information and sensitive national security information systems in the interests of national security.  In accordance with SECNAV M5510.30, once an individual's access is suspended for cause, DODCAF will remove eligibility and the command cannot reinstate access until DODCAF adjudicates the issues and makes a favorable eligibility determination.  As stated in the notice of proposed indefinite suspension letter (dtd 9 Oct 19), his position description as an Operations Research Analyst requires he maintain eligibility for a security clearance and access to classified and sensitive national security information.  Therefore, he cannot accomplish the required work without this access.  I find that placing Mr. Dionne on administrative leave with pay for 30 calendar days is justified and appropriate.  I find that Mr. Dionne did not present information in the October 11th call or written letter that repudiates the suspension of access.

K. D. SULLIVAN
Executive Director
Navy Recruiting Command

Encl (11)

EXHIBIT 4



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR.
MILLINGTON, TN 38054-5057

IN REPLY REFER TO
12700
Ser OOB/ 726
31 Oct 19

From: Commander, Navy Recruiting Command

To:   Mr. Christopher E. Dionne, Operations Research Analyst, GS-1515-12, NRC Millington, TN

Subj: DECISION ON PROPOSED INDEFINITE SUSPENSION

Ref:   (a) Notice of Proposed Indefinite Suspension dated 9 October 2019
       (b) SECNAV M 5510.30
       (c) 5 U.S.C. 7513
       (d) 5 C.F.R. 752
       (e) Christopher Dionne ltr dtd 10 October 2019

1. You were notified by reference (a) that it was proposed to place you on indefinite suspension, without pay, based on the suspension of access to classified information and/or assignment to a sensitive position pursuant to SECNAV M 5510.30.

2. You were provided the specific reasons for the proposal in reference (a) and you were afforded the opportunity to make an oral and/or written reply. You submitted a timely written reply on 10 October 2019, and a copy has been added to the official file. I have also considered your timely verbal reply on 11 October 2019.

3. After careful consideration of your reply and the record of information supporting the reason for the proposed suspension, I find the basis for the indefinite suspension based on suspension of your access to classified information to be fully supported.

4. You are required to have access to DoD networks and utilize systems that store sensitive information in order to perform the duties of your position as an Operations Research Analyst. Pursuant to reference (b), your access has been appropriately suspended and your access cannot be reinstated until a favorable eligibility determination is made by the Department of Defense Consolidated Adjudications Facility (DoDCAF). Additionally, there is no Navy policy or regulation requiring that you be reassigned to non-sensitive duties or position upon suspension of your access. Therefore, I find it in the best interest of the Navy and to promote the efficiency of the service that you be placed on indefinite suspension effective 9 November 2019, pending a final determination of your eligibility for security clearance and assignment to a sensitive position by DoDCAF. If the final adjudication is a decision to revoke or deny your eligibility for a security clearance or assignment to a sensitive position, you will remain on indefinite suspension until the expiration of the notice period associated with any follow on administrative action initiated against you as a result of such final adjudication.

5. In accordance with references (c) and (d), you may file an appeal of this decision to the Merit Systems Protection Board (MSPB) to the following address:

(12)

Subj: DECISION ON PROPOSED INDEFINITE SUSPENSION

U.S. Merit Systems Protection Board
Atlanta Regional Office
401 W. Peachtree Street, NW
10th Floor
Atlanta, GA 30308-3519

You may file an appeal electronically on the Board's website at http://e-appeal.mspb.gov. or a copy of the Board's regulations and appeal form are available at www.mspb.gov. Should you file an appeal, the Navy's agency representative will be: Carol M. Lynch, NETC Office of Counsel, 250 Dallas Street, Pensacola, FL 32508-5220, carol.m.lynch1@navy.mil, (850) 452-4828 (DSN: 459), fax (850) 452-4737. If you elect to appeal, the appeal must be submitted no later than 30 calendar days after the effective date of the removal or 30 calendar days after the date of receipt of this decision, whichever is later. If a party does not submit an appeal within the time set by statue, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown. The judge will provide the party an opportunity to show why the appeal should not be dismissed as untimely.

6. If you believe this decision was based on discrimination on the basis of race, color, sex, national origin, religion, age or disability, you may either include this reason and supporting information in any appeal you may initiate with the MSPB, OR, you may raise the allegation under the Agency's discrimination complaints procedures within 45 days. To file a discrimination complaint, contact the Naval Education and Training Command, Equal Employment Opportunity intake line at (850) 452-4180.

7. You may contact Glen Colbert, Human Resources Specialist, at (850) 452-2670 or glen.colbert@navy.mil to request a copy of the case file or if you have any questions concerning your rights in this matter.

K. D. SULLIVAN
Executive Director

ACKNOWLEDGE RECEIPT

Employee signature

5 Nov 2019
Date

Copy to:
NETC LER
NRC 00S
NRC N12

2

1 (12)

05 Nov 19

## MEMORANDUM FOR THE RECORD

Subj:  DELIVERY TO MR. CHRISTOPHER DIONNE OF THE DECISION OF APPEAL OF PROPOSED INDEFINITE SSUSPENSION

1. On 05 Nov 2019, CAPT Moran met with Mr. Christopher Dionne outside the rear entrance of building 784, CNRC headquarters at approximately 1545.

2. Mr. Dionne signed the original decision letter and a copy of the letter.

3. I retained a copy of the letter and the original was given to Mr. Dionne for his records.

4. Mr. Dionne expressed understanding that his pay would stop when the indefinite suspension began. CAPT Moran explained to him that if he wanted to contest anything the Merit System Protection Board information was in the letter and they should be contacted if he so desired.

5. Mr. Dionne explained that he believed that the phone call from May 8th was connected to the indefinite suspension and that he had talked with NCIS. He went on to explain that he had asked NCIS to investigate him and that he was downloading mass shooting information to build a threat assessment model. He also expressed concern that DoDCAF did not have accurate information.

6. I explained to him that the MSPB existed to help him as did his Congressman as he had mentioned that in previous communications he was filing a congressional action. I also explained that we were checking DODCAF every day to see if there was an update and would let him know when we received an update.

7. At approximately 1600, I received a phone call from Mr. Dionne where he said he was going to retire. I asked if he wanted us to send any information to him wherein he provided his personal email. The information regarding civilian retirement was forwarded at approximately 1708.

8. At approximately 1609 and 1614 I had voice messages from Mr. Dionne where he expressed a desire for me to try and attain the NCIS report from May that was related to the allegations of a threat made by Mr. Dionne against the NRC HQ. He stated that he was going to use that to file charges against Patty Hickman. He also asked if he could go into building 750 to meet with the IG.

9. In the email response with the retirement information, I passed that he would have to file a Freedom of Information Act request with NCIS for the report as NRC does not control the material.

M.P. MORAN

Encl (13)

EXHIBIT 9

Subj: DECISION ON PROPOSED INDEFINITE SUSPENSION

U.S. Merit Systems Protection Board
Atlanta Regional Office
401 W. Peachtree Street, NW
10th Floor
Atlanta, GA 30308-3519

You may file an appeal electronically on the Board's website at http://e-appeal.mspb.gov. or a copy of the Board's regulations and appeal form, are available at www.mspb.gov. Should you file an appeal, the Navy's agency representative will be: Carol M. Lynch, NBTC Office of Counsel, 250 Dallas Street, Pensacola, FL 32508-5220, carol.m.lynch1@navy.mil, (850) 452-4828 (DSN: 459), fax (850) 452-4737. If you elect to appeal, the appeal must be submitted no later than 30 calendar days after the effective date of the removal or 30 calendar days after the date of receipt of this decision, whichever is later. If a party does not submit an appeal within the time set by statue, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown. The judge will provide the party an opportunity to show why the appeal should not be dismissed as untimely.

6. If you believe this decision was based on discrimination on the basis of race, color, sex, national origin, religion, age or disability, you may either include this reason and supporting information in any appeal you may initiate with the MSPB, OR, you may raise the allegation under the Agency's discrimination complaints procedures within 45 days. To file a discrimination complaint, contact the Naval Education and Training Command, Equal Employment Opportunity intake line at (850) 452-4180.

7. You may contact Glen Colbert, Human Resources Specialist, at (850) 452-2670 or glen.colbert@navy.mil to request a copy of the case file or if you have any questions concerning your rights in this matter.

K. D. SULLIVAN
Executive Director

ACKNOWLEDGE RECEIPT

Employee signature

5 Nov 2019
Date

Copy to:
NETC LER
NRC 00S
NRC N12

2

Encl (13)

EXHIBIT 8



# Privacy Act Data Cover Sheet

To be used on
all documents
containing personal
information

## DOCUMENTS ENCLOSED ARE SUBJECT TO THE PRIVACY ACT OF 1974

Contents shall not be disclosed, discussed, or shared with individuals unless they have a direct need-to-know in the performance of their official duties.  Deliver this/these document(s) directly to the intended recipient.  **DO NOT** drop off with a third-party.

The enclosed document(s) may contain p_____ _____ _____ileged information and should be treated as "For Official Use Only."  Unauthorized disc_____ ___ of this information may result in **CIVIL** and **CRIMINAL** penalties.  If you are not the intended recipient or believe that you have received this document(s) in error, do not copy, disseminate or otherwise use the information and contact the owner/creator or your Privacy Act officer regarding the document(s).

# Privacy Act Data Cover Sheet

DD FORM 2923, SEP 2010

*Encl (14)*

LER Advisor: Glen Colbert

Proposing Official: CAPT Michael Moran
Deciding Official: Dr. Kevin Sullivan

### Dionne, Christopher

| No. | Description | Date |
|---|---|---|
| 1 | MFR – CAPT MORAN DELIVERY NOTES | 11/05/2019 |
| 2 | DECISION LETTER | 11/05/2019 |
| 3 | DECIDING OFFICIAL MFR | 10/24/2019 |
| 4 | C. DIONNE RESPONSE LETTER | 10/10/2019 |
| 5 | ADMINISTRATIVE LEAVE NOTICE | 10/09/2019 |
| 6 | NOTICE OF PROPOSED INDEFINITE SUSPENSION | 10/09/2019 |
| 7 | SUSPENSION OF ACCESS LETTER | 10/09/2019 |
| 8 | DON DECLARATION LETTER | 10/19/2018 |
| 9 | POSITION DESCRIPTION | 06/01/2016 |
| 10 | SF 50 | 01/06/2019 |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| | | |

**FOR OFFICIAL USE ONLY – PRIVACY SENSITIVE**
ANY MISUSE OR UNAUTHORIZED DISCLOSURE MAY RESULT IN BOTH CIVIL AND CRIMINAL PENALTIES

Encl (14)

05 Nov 19

MEMORANDUM FOR THE RECORD

Subj:   DELIVERY TO MR. CHRISTOPHER DIONNE OF THE DECISION OF APPEAL OF PROPOSED INDEFINITE SSUSPENSION

1. On 05 Nov 2019, CAPT Moran met with Mr. Christopher Dionne outside the rear entrance of building 784, CNRC headquarters at approximately 1545.

2. Mr. Dionne signed the original decision letter and a copy of the letter.

3. I retained a copy of the letter and the original was given to Mr. Dionne for his records.

4. Mr. Dionne expressed understanding that his pay would stop when the indefinite suspension began. CAPT Moran explained to him that if he wanted to contest anything the Merit System Protection Board information was in the letter and they should be contacted if he so desired.

5. Mr. Dionne explained that he believed that the phone call from May 8th was connected to the indefinite suspension and that he had talked with NCIS. He went on to explain that he had asked NCIS to investigate him and that he was downloading mass shooting information to build a threat assessment model. He also expressed concern that DoDCAF did not have accurate information.

6. I explained to him that the MSPB existed to help him as did his Congressman as he had mentioned that in previous communications he was filing a congressional action. I also explained that we were checking DODCAF every day to see if there was an update and would let him know when we received an update.

7. At approximately 1600, I received a phone call from Mr. Dionne where he said he was going to retire. I asked if he wanted us to send any information to him wherein he provided his personal email. The information regarding civilian retirement was forwarded at approximately 1708.

8. At approximately 1609 and 1614 I had voice messages from Mr. Dionne where he expressed a desire for me to try and attain the NCIS report from May that was related to the allegations of a threat made by Mr. Dionne against the NRC HQ. He stated that he was going to use that to file charges against Patty Hickman. He also asked if he could go into building 750 to meet with the IG.

9. In the email response with the retirement information, I passed that he would have to file a Freedom of Information Act request with NCIS for the report as NRC does not control the material.

M.P. MORAN

Encl (14)



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR.
MILLINGTON, TN 38054-5057

IN REPLY REFER TO:
12700
Ser OOB/726
31 Oct 19

From: Commander, Navy Recruiting Command
To:    Mr. Christopher E. Dionne, Operations Research Analyst, GS-1515-12, NRC Millington, TN

Subj:  DECISION ON PROPOSED INDEFINITE SUSPENSION

Ref:   (a) Notice of Proposed Indefinite Suspension dated 9 October 2019
       (b) SECNAV M 5510.30
       (c) 5 U.S.C. 7513
       (d) 5 C.F.R. 752
       (e) Christopher Dionne ltr dtd 10 October 2019

1. You were notified by reference (a) that it was proposed to place you on indefinite suspension, without pay, based on the suspension of access to classified information and/or assignment to a sensitive position pursuant to SECNAV M 5510.30.

2. You were provided the specific reasons for the proposal in reference (a) and you were afforded the opportunity to make an oral and/or written reply. You submitted a timely written reply on 10 October 2019, and a copy has been added to the official file. I have also considered your timely verbal reply on 11 October 2019.

3. After careful consideration of your reply and the record of information supporting the reason for the proposed suspension, I find the basis for the indefinite suspension based on suspension of your access to classified information to be fully supported.

4. You are required to have access to DoD networks and utilize systems that store sensitive information in order to perform the duties of your position as an Operations Research Analyst. Pursuant to reference (b), your access has been appropriately suspended and your access cannot be reinstated until a favorable eligibility determination is made by the Department of Defense Consolidated Adjudications Facility (DoDCAF). Additionally, there is no Navy policy or regulation requiring that you be reassigned to non-sensitive duties or position upon suspension of your access. Therefore, I find it in the best interest of the Navy and to promote the efficiency of the service that you be placed on indefinite suspension effective 9 November 2019, pending a final determination of your eligibility for security clearance and assignment to a sensitive position by DoDCAF. If the final adjudication is a decision to revoke or deny your eligibility for a security clearance or assignment to a sensitive position, you will remain on indefinite suspension until the expiration of the notice period associated with any follow on administrative action initiated against you as a result of such final adjudication.

5. In accordance with references (c) and (d), you may file an appeal of this decision to the Merit Systems Protection Board (MSPB) to the following address:

Encl (14)

Subj: DECISION ON PROPOSED INDEFINITE SUSPENSION

U.S. Merit Systems Protection Board
Atlanta Regional Office
401 W. Peachtree Street, NW
10th Floor
Atlanta, GA 30308-3519

You may file an appeal electronically on the Board's website at http://e-appeal.mspb.gov. or a copy of the Board's regulations and appeal form are available at www.mspb.gov. Should you file an appeal, the Navy's agency representative will be: Carol M. Lynch, NETC Office of Counsel, 250 Dallas Street, Pensacola, FL 32508-5220, carol.m.lynch1@navy.mil, (850) 452-4828 (DSN: 459), fax (850) 452-4737. If you elect to appeal, the appeal must be submitted no later than 30 calendar days after the effective date of the removal or 30 calendar days after the date of receipt of this decision, whichever is later. If a party does not submit an appeal within the time set by statue, regulation, or order of a judge, it will be dismissed as untimely filed unless a good reason for the delay is shown. The judge will provide the party an opportunity to show why the appeal should not be dismissed as untimely.

6. If you believe this decision was based on discrimination on the basis of race, color, sex, national origin, religion, age or disability, you may either include this reason and supporting information in any appeal you may initiate with the MSPB, OR, you may raise the allegation under the Agency's discrimination complaints procedures within 45 days. To file a discrimination complaint, contact the Naval Education and Training Command, Equal Employment Opportunity intake line at (850) 452-4180.

7. You may contact Glen Colbert, Human Resources Specialist, at (850) 452-2670 or glen.colbert@navy.mil to request a copy of the case file or if you have any questions concerning your rights in this matter.

K. D. SULLIVAN
Executive Director

ACKNOWLEDGE RECEIPT

Employee signature

5 No 2019
Date

Copy to:
NETC LER
NRC 00S
NRC N12

2

Encl (14)

24 Oct 19

MEMORANDUM for the RECORD

Subj: MR. CHRISTOPHER E. DIONNE REPLY TO SUPENSION OF ACCESS

On October 11, 2019 Mr. Christopher E. Dionne submitted a verbal reply and written letter dated October 10, 2019. Mr. Glen Colbert (NETC HRO, Labor and Employee Relations) participated in the October 11th call as a professional HR advisor.

I, Kevin D. Sullivan, begin the call by informing Mr. Dionne that no decisions would be render in the call and that my intent was to receive his information. I informed him of my intent to take notes throughout the call. Mr. Dionne acknowledged the terms prior to sharing the information he planned to present. Mr. Dionne begin by stating over the last year he has endured two suspensions. One of the suspensions included alleged gun violence. In noting the alleged gun violence he sighed "unbelievable". He also stated Mr. Jamie Johnson inform him that he knew who made the alleged gun violence call. According to Mr. Dionne, he told Mr. Johnson he did not want to know who did it.

Throughout the call with Mr. Dionne, he stated there has been numerous false allegations about him. Moreover, he believes the civilian mid-year and annual appraisal periods are triggering these negative events. As an example, he stated the gun violence "shoot the place up" allegation was initiated around the end of year performance reviews.

Mr. Dionne requested to be separated from N5 Department; one hour meeting with NETC representatives, and an investigation into workforce harassment. He stated he has plenty of documentation. According to him, he is trying to find ways to serve the command better.

On the basis on all the facts, the Commander, Navy Recruiting Command suspended Mr. Dionne's access to classified information and sensitive national security information systems in the interests of national security. In accordance with SECNAV M5510.30, once an individual's access is suspended for cause, DODCAF will remove eligibility and the command cannot reinstate access until DODCAF adjudicates the issues and makes a favorable eligibility determination. As stated in the notice of proposed indefinite suspension letter (dtd 9 Oct 19), his position description as an Operations Research Analyst requires he maintain eligibility for a security clearance and access to classified and sensitive national security information. Therefore, he cannot accomplish the required work without this access. I find that placing Mr. Dionne on administrative leave with pay for 30 calendar days is justified and appropriate. I find that Mr. Dionne did not present information in the October 11th call or written letter that repudiates the suspension of access.

K. D. SULLIVAN
Executive Director
Navy Recruiting Command

Encl (14)

10 Oct 2019

From:   Christopher Dionne
To:     Executive Officer, Navy Recruiting Command

Reference (a): End-Of-Year Review Grievance
Reference (b): Courtesy Copy, Request for a Congressional Inquiry

Subject: 30 Calendar Day Suspension

1. My goal is to 'get to the bottom' of these matters.  References (a) and (b) further amplifies my present situation.

2. The following list false allegations made against me.  It is not all inclusive.

a. Incident 1 (September 2018).  Speaking so loudly on the phone that my supervisor could hear me in the back of her office.  According to her charge, I was calling everyone stupid and I said I was worked with stupid people. I legally obtained the NRC's phone records.  There was no such phone call. The charge was dropped.  Ms. Hickman's excuse was that it must have been another day and another day.  Ms. Hickman was like a "hammer looking for a nail."  This incident indicated Ms. Hickman's true nature.

Timeframe:     Shortly before the Mid-Year Review
Accuser Known: Yes
Charge Known:  Yes
Charge:        Unsubstantiated

b. Incident 2 (8 May 2019).  Someone made an anonymous phone call to MSA Millington stating that I was going to come to work and shoot the place up.  However, I was at the dentist office.  The Naval Criminal Investigative Service (NCIS) came to my house; conducted an investigation and cleared me of any wrongdoing.

Timeframe:     Shortly before the End-of-Year Review
Accuser Known: No
Charge Known:  Yes
Charge:        Unsubstantiated

*Encl (14)*

Subject: 30 Calendar Day Suspension

c. Incident 3 (9 October 2019). CNRC had a derogatory package on me. So, he signed it and sent it to DONCAF. I was never charged with anything, counselled and/or interviewed. I was never informed about my accusers. I was told that this was an administrative process; that I would be given 30 days paid Administrative Leave; that I had to sign two documents; and that I would be escorted by security out of the building.

Timeframe:      Shortly before the Mid-Year Review
Accuser Known: No
Charge Known:  No
Charge:         Pending

3. After the noting the above and other unsubstantiated charges mentioned in my last End-of-Year Review, it is reasonable to expect the command to realize that it may have a problem other than me. Using DONCAF polices allowed the NRC to circumvent due process. A point to consider is that I do not deal with classified, sensitive, and/or For Official Use Only information. Another point is that if I were such a threat to National Security then why did the command wait until 1730 to escort me out of the building?

4. DONCAF circumventing Due Process most likely applies to cases of employees acting irrationally and/or immediate threats to National Security. However, I do not believe that it negates Due Process.

5. While I did not have an illustrative Career, I did serve for 30 years combined in the Active and Reserve Marine Cops components as both an Officer and Enlisted Marine. My positions included Executive Officer doe the Center of Analytics in the United States Space Command and Senior Marine Planner for Multi-National Forces-Iraq. As an overseas contractor I was a Senior Consultant for the Saudi Naval and Marine Forces, Recruiter for the New Iraqi Army and Facilities Manager for the New Embassy Complex, Iraq. As part of the Civilian Expeditionary Workforce (CEW) I served in Afghanistan as a Logistics Systems Analyst. In summary, I have been serving my country in and out of uniform for almost all of my adult life.

6. Now to Examine Ms. Hickman's Motus Operandi. Although I have been told that the complaints did not originate in N5, the methods are comparable to what I have been experiencing in the past. Ms. Hickman builds a collection of exaggerated and imaginary actions then delivers them in an 'ambush' meeting. In my opinion, she has neither leadership skills nor integrity.

Encl (14)

Subject: 30 Calendar Day Suspension

7. Next. I will address my computers habits since that seems to be an issue. First, I remove my CAC card from my computer when I leave the office. I usually leave in my machine when I am in the office expect if I will be away from my workstation for an extended period of time (i.e. Meeting in the N5 Conference Room). Headphone use is allowed. The following is my background listening itinerary.

    a. AM
       1. Ambient Space music
       2. Ambient Space Music Approaching Mars
       3. Some contemporary music
    b. PM (late afternoon motivation)
       1. Some contemporary music
       2. Charge of the Light Brigade (4:24 video)
       3. British Royal Marine Commando commercial
       4. Marines Hymn

8. Regarding personal habits, after many years of exercising on a heavy bag, I seriously strained my back. Moreover, last June I furthered strained my back while lifting weights. The result is I often look hostile at work while I readjust my upper torso to address back pain. This may seem like unusual behavior.

9. My projects for the past 2-3 months included:

    a. Critical Element 1. Since there were no assignments, I completed a new interactive Enlisted Goaling Model. I submitted it to N5.
    b. Critical Element 2. Since there were no assignments, Mr. Diggs (N3) and I with our Department Head approvals initiated a plan to repopulate the High School folders complete high school data and integrate that data into Sales Force with NALTS data NICHE (the supporting vendor) prepared a 10:03 NRC specific video, free of charge, for this command.
    c. Critical Element 3. Centralized DEP Management, now OBE.

10. For the past four months, I submitted Employee Equal Opportunity Complaints (EEOC) to address a wide range of topics including:

    a. Relocation request to do purposeful work where I could better serve the command.
    b. Relocation request that proactively identifies this situation.

11. In summary, for the past year I have been the victim of false allegations from Gun Violence though a Threat to National Security.

Encl (14)

12. My question is, "What does this command want me to do?" If the command wants me to retire, then I will give it consideration. If the command wants me to continue, then it should relocate me to where I could best serve as part of the Transformation process and avoid future situations such as this.

13. My contact information is (home) 901-873-1623, (email) chr892@hotmail.com.


Respectfully Submitted

Christopher Dionne

Encl (14)



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR.
MILLINGTON, TN 38054-5057

9 Oct 19

From: Director of Manpower, Navy Recruiting Command
To:    Mr. Christopher E. Dionne, Operations Research Analyst, GS-1515-12

Subj:  ADMINISTRATIVE NOTICE LEAVE

Ref:   (a) 5 U.S.C. Section 6329
       (b) SECNAVINST 12752.1A
       (c) Notice of Proposed Indefinite Suspension dated 9 October 2019

1.   In accordance with reference (a), you are immediately placed on administrative leave/notice leave, with pay, for 30 calendar days. Per reference (c), you have a notice period of 30 calendar days, pending a decision on your proposed indefinite suspension. You will be notified in writing if an extension of notice leave is necessary beyond the original 30 calendar days.

2.   While on notice leave, you are not to report to work unless directed to do so by your supervisor, Ms. Patricia Hickman. You are not to engage in any work activities. You are prohibited from entering any Navy Recruiting Command buildings or offices during the notice period. However, if there are documents in your office or information that you require to prepare for your oral and/or written response to the proposed indefinite suspension or any Department of Defense Consolidated Adjudications Facility (DoD CAF) matter involving your security clearance eligibility, you may contact Ms. Hickman or me to arrange a time to access and retrieve those documents or information. Your access to NMCI, a sensitive national security information system, will be temporarily suspended and later if your eligibility and access are reinstated and you are returned to duty. Violation of any of the preceding instructions may subject you to disciplinary action up to and including removal from federal service.

3.   Additionally, you are directed to call your supervisor, Ms. Patricia Hickman, at (901) 874-9221 or CAPT Moran at (901) 874-9461 no later than 0800 Monday through Friday to report in while you are on notice leave. If you do not reach her or me, you must leave a voice message and phone number where you can be reached between the hours of 0730 – 1600. Failure to contact Ms. Hickman or CAPT Moran as directed may result in you being placed in an absent without leave (AWOL) status. AWOL is an unapproved leave status which may be the basis for disciplinary action up to and including removal from federal service.

4.   I wish to advise you that the Department of Navy Civilian Employee Assistance Program (DONCEAP) is available to assist you in the event there are personal problems affecting you. You may contact an DONCEAP representative by calling 1 (844) 366-2327. This information is provided for referral purposes only and is not intended to obligate the agency regarding reasonable accommodation issues.

En 1 (14)

Subj:   ADMINISTRATIVE NOTICE LEAVE

5.  If you have any questions concerning this matter, you may contact Glen Colbert, Human Resources Specialist, at (850) 452-2670 or glen.colbert@navy.mil.

M. P. MORAN
CAPT, USN

_____

I acknowledge receipt of this letter.

_____                    _____
Employee Signature                                   Date

2

Encl (14)



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR.
MILLINGTON, TN 38054-5057

9 Oct 19

From: Director of Manpower, Navy Recruiting Command
To:   Mr. Christopher E. Dionne, Operations Research Analyst, GS-1515-12

Subj: NOTICE OF PROPOSED INDEFINITE SUSPENSION

Ref:  (a) 5 U.S.C. 7513
      (b) 5 C.F.R. 752
      (c) SECNAVINST 12752.1A
      (d) SECNAV M 5510.30
      (e) NRC Letter dated 8 October 2019

1.  In accordance with references (a) through (c), it is proposed to place you on indefinite suspension (non-duty, non-pay status) based on my decision to suspend your access to classified information pursuant to reference (d), Paragraph 9.6(4). My decision to suspend your access is based on information outlined in reference (e).

2.  In accordance with your position description (PD) as an Operations Research Analyst you hold a position that is designated as Non-Critical Sensitive that requires you to maintain eligibility for a security clearance and access to classified and sensitive national security information. Once access is suspended, your access cannot be reinstated unless the Department of Defense Consolidated Adjudications Facility (DoD CAF) renders a favorable eligibility determination. The U. S. Navy does not have a policy requiring reassignment of personnel to non-sensitive positions or duties upon suspension of access. I believe this proposal, if effected, will promote the efficiency of the service.

3.  If a decision to suspend you from duties without pay is reached, your suspension will remain in effect, without pay, until such time as a final adjudication of your eligibility for security clearance and assignment to a sensitive position is made pursuant to reference (d). If the final adjudication is a decision to deny your eligibility for a security clearance or assignment to a sensitive position you will remain on indefinite suspension, without pay, until the expiration of the notice period associated with any follow on administrative action initiated against you as a result of such final adjudication.

4.  In accordance with reference (a) you have the following rights:

    a.  To be represented by an attorney or other representative.

    b.  To review the material relied upon to support this proposed action (case file).

    c.  To answer this proposal both orally and/or in writing, and to furnish affidavits and documentary evidence, including medical evidence, in support of your reply. Your reply must be submitted within seven (7) calendar days of the date you receive this proposal. Your reply must be submitted to Dr. Kevin D. Sullivan, Executive Director, Navy Recruiting Command,

*Encl (14)*

Subj:   NOTICE OF PROPOSED INDEFINITE SUSPENSION

5722 Integrity Drive, BLDG 784, Millington, TN 38054. To schedule an oral reply to Mr. Sullivan, you may call 901-874-9005. Any response submitted within the specified time will be considered prior to a decision on this proposal.

5.   Upon request, you and/or your representative (if in a duty status) may be granted a reasonable amount of official time to review the case file, to prepare a written reply, and/or to make a personal reply to this notice. You may be represented by an attorney or other representative when making your reply, but such designation must be in writing and signed/dated by you and submitted to Dr. Sullivan prior to making any reply.

6.   You will receive a written decision on this proposal as soon as after the time allowed for your reply. If a decision is made to indefinitely suspend you, the action will not be effected sooner than thirty (30) calendar days from the date you receive this letter.

7.   Upon receipt of this letter, you are immediately placed on administrative leave, (leave with pay). You are not to report to work unless directed to do so. While on administrative leave, you are to contact Ms. Patricia Hickman at (901) 874-9221 or CAPT Moran at (901) 874-9461 every work day before 0800. If Ms. Hickman or CAPT Moran are not available, you are to leave a message and a contact number where you can be reached. You are to remain available during your normal working hours unless you request and are granted appropriate leave. Failure to follow these instructions may result in you being placed in an absent without leave status (AWOL), which may be the basis for disciplinary action up to and including removal.

8.   I wish to advise you that the Department of the Navy Civilian Employee Assistance Program (DONCEAP) is available to assist you in the event there are personal problems affecting your performance. You may contact an CEAP representative by calling 1 (844) 366-2327. This information is provided for referral purposes only and is not intended to obligate the agency regarding reasonable accommodation issues.

9.   If you have any questions concerning this matter or to request a copy of the case file, you may contact Glen Colbert, Human Resources Specialist, at (850) 452-2670 or via email at glen.colbert@navy.mil.

M. P. MORAN
CAPT, USN

I acknowledge receipt of this letter. I understand my signature does not indicate my agreement with this action. It only represents receipt of this notice on the date signed.

Employee signature                          191009
                                            Date

2

Encl (14)



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR.
MILLINGTON, TN 38054-5057

5510
Ser 00/687
8 Oct 19

MEMORANDUM

From: Commander, Navy Recruiting Command
To:   Mr. Christopher E. Dionne, CIV, GS-12, N5

Subj: SUSPENSION OF ACCESS ICO CHRISTOPHER E. DIONNE, 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

Ref:  (a) DoDM 5200.02, procedures for the DoD Personnel Security Program (PSP) April 3, 2017
      (b) Security Executive Agent Directive 4, National Security Adjudicative Guidelines, December 10, 2016 (Effective June 8, 2017)
      (c) SECNAV M5510.30, Personnel Security Program Manual

1. Per references (a) through (c), your access to classified information and sensitive national security information systems have been suspended pending final adjudication of your eligibility by DoD Central Adjudication Facility (DoDCAF).

2. This decision is made on the basis of facts now known to include a pattern of behavior by you that reflects potential questionable judgement, trustworthiness, and reliability. Specific concerns include statements to co-workers that evidence your increasing hostility to your supervisors and leadership; and statements and evidence that indicate you may cause or may be planning to cause physical harm in the Navy Recruiting Command workplace.

3. My decision to suspend your access to classified information and sensitive national security information systems has been made in the interests of national security as a result of my loss of confidence in your judgment, reliability, and trustworthiness and your willingness to comply with laws, rules and regulations.

4. My point of contact in this matter is CWO3 Antonio D. Franklin, Navy Recruiting Command's Security Manager at (901)874-9432 or via e-mail: antonio.franklin@navy.mil.

B. R. McLANE

Copy to:
NETC (OGC and SECM)
NRC (HR, N1, JAG and AT/SECM)
NCIS

"FOR OFFICIAL USE ONLY-PRIVACY SENSITIVE:   ANY MISUSE OR UNAUTHORIZED DISCLOSURE MAY RESULT IN BOTH CIVIL AND CRIMINAL PENALTIES."

Encl (14)

## Statement of Reasons Receipt ICO Christopher E. Dionne

I, Christopher E. Dionne, 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, acknowledge that I have received the Statement of
Reasons (SOR) notifying me of the Commander, Navy Recruiting Command's decision to
suspend my access to classified information and sensitive national security information systems.
My signature indicates my receipt of the statement of reasons and does not imply or indicate my
agreement or acquiescence to the contents of the notice.


_____
(Signature)                                        

_19 /0 09_
(Date)


_____
(Witness Signature)

_09OCT19_
(Date)


Encl (14)



**DEPARTMENT OF THE NAVY**
OFFICE OF CIVILIAN HUMAN RESOURCES
614 SICARD STREET SE SUITE 100
WASHINGTON, D.C.  20374-5072

## Declaration

I, Sandra Ringer Mendoza, Department of the Navy, Director of Human Resources Policy and Programs, hereby declare under the provisions of 28 U.S.C. Section 1746:

My office is responsible for issuing policy directives, regulations and procedures concerning the Navy's civilian workforce. I am familiar with the opinion of the U.S, Supreme Court in Department of the Navy v. Egan, 484 U.S. 518 (1988), and with its impact on the workforce in cases involving the loss or suspension of a security clearance. I am also aware of the issues regarding employees who are faced with the loss of a security clearance, addressed in Griffin v. Defense Mapping Agency, 864 F.2d 1579 (Fed. Cir. 1989) and the determination of ineligibility to occupy a sensitive position addressed in Kaplan v. Conyers, 733 F.3d 1148 (Fed. Cir. 2013), cert. denied sub nom. Northover v. Archuleta, 134 S. Ct. 1759 (2014).

The Department of the Navy has no official policy requiring a detail or reassignment to non-sensitive duties following the loss of a security clearance, the suspension of access to classified information, or the determination of ineligibility to occupy a sensitive position. The Department of the Navy has never issued, and to the best of my knowledge has no plans to issue, regulations that would require activities to detail or reassign employees following the loss of a security clearance, the suspension of access to classified information, or the determination of ineligibility to occupy a sensitive position.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _19 October 2018_    _Sandra Ringer Mendoza_
                                   Sandra Ringer Mendoza

Encl (14)

86715.

## POSITION DESCRIPTION (Please Read Instructions on the Back)

**1. Agency Position No.** 17008

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| [X] Redescription [ ] New | [X] Hdqtrs [ ] Field | Navy Recruiting | Millington, TN | |
| [ ] Reestablishment [ ] Other | | | | |

**Explanation (Show any positions replaced)**
Cancels PD # 14683

| 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| [X] Exempt [ ] Nonexempt | [ ] Executive Personnel Financial Disclosure   [ ] Employment and Financial Interest | [X] Yes [ ] No |

| 10. Position Status | 11. Position Is | 12. Sensitivity | 13. Competitive Level Code A45E |
|---|---|---|---|
| [X] Competitive | [ ] Supervisory | [ ] 1-Non-Sensitive   [ ] 3-Critical | |
| [ ] Excepted (Specify in Remarks) | [ ] Managerial | [X] 2-Noncritical Sensitive   [ ] 4-Special Sensitive | 14. Agency Use |
| [ ] SES (Gen.) [ ] SES (CR) | [X] Neither | | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | | | | | | |
| c. Second Level Review | | | | | | |
| d. First Level Review | OPERATIONS RESEARCH ANALYST | GS | 1515 (11) | 12 | KLA | 06/01/2016 |
| e. Recommended by Supervisor or Initiating Office | Operations Research Analyst | GS | 1515 | 12 | | |

**16. Organizational Title of Position (if different from official title)**

**17. Name of Employee (if vacant, specify)**

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| Navy Recruiting Command | |
| **a. First Subdivision** Operations Department (N3) | **d. Fourth Subdivision** |
| **b. Second Subdivision** Operational Analysis Division (N37) | **e. Fifth Subdivision** |

**19. Employee Review–This is an accurate description of the major duties and responsibilities of my position.**

Signature of Employee (optional)

**20. Supervisory Certification.** I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

**a. Typed Name and Title of Immediate Supervisor**
Daniel Ammons-Moreno
Supv Operations Research Analyst

**b. Typed Name and Title of Higher-Level Supervisor or Manager (optional)**

Signature _____ Date 5/2/16

Signature _____ Date

**21. Classification/Job Grading Certification.** I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.

**22. Position Classification Standards Used in Classifying/Grading Position**
OPM JFS for Professional Work in the Mathematical Sciences Group, 1500/GS-1515 Operations Research Series, September 2005

**Typed Name and Title of Official Taking Action**
KENDRA L. ATIZ
HR SPEC (CLASS), OCHR STENNIS

Signature ATIZ.KENDRA.LO UISE.1073218205  Digitally signed by ATIZ.KENDRA.LOUISE.1073218205 ...   Date 06/01/2016

**Information for Employees.** The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

**24. Remarks**
UIC 66715, BIN 1274324 and 1274347, 1274346, 1274231, 1274226, 1274227
SUPV: 8

**25. Description of Major Duties and Responsibilities (See Attached)**

NSN 7540-00-634-4265    Previous Edition Usable    5008-106

OF 8 (Rev. 1-85)
U.S. Office of Personnel Management
FPM Chapter 295

407566

Encl (14)

PD# 17008

OPERATIONS RESEARCH ANALYST
GS-1515-12
**POSITION DESCRIPTION**

### INTRODUCTION

Serves as an Operations Research Analyst in the Operations Department (N3) at Commander, Navy Recruiting Command (CNRC). The Operations Department is responsible for policy, process oversight, and day-to-day execution of Navy Recruiting operations across the nation. Incumbent uses techniques of operations research to analyze complex recruiting problems and provide senior leadership with data-driven analysis to support strategic decision making. This involves utilizing project and research development, applied mathematics, statistics, computational programming, and data science techniques ultimately communicating highly technical findings to senior leadership to facilitate strategic decision making regarding all aspects of Navy Recruiting Command.

### MAJOR DUTIES

Serves as an analyst accomplishing a variety of research projects and studies associated with all aspects of the Navy Recruiting Command. As a technical expert, the incumbent applies his or her knowledge of operations research principles, process analysis, statistical analysis, mathematical modeling, programming, and analytical judgment to autonomously complete projects and studies of high complexity in a dynamic work environment.

**Leads Analytical Projects (70%)**
Serves as a team leader on projects directed toward the analysis and assessment of CNRC operations, manpower allocation, economic forecast, and resource allocation. Activities may include: interviewing leadership to develop problem statements that are complex in scope; identification and exploration of relevant internal and external data sources; identification of appropriate mathematical methods that fit the problem statement and requirements; execution/implementation of those mathematical methods; collaboration with other analysts; and documenting and summarizing findings. Incumbent provides a range of technical advice and assistance regarding quantitative analysis, process management, technical data management, technical services, and regulatory policy constraints imposed by higher headquarters. Additionally, incumbent serves as a technical expert evaluating analytical research conducted by outside entities.

**Data Analysis and Reporting (30%)**
The incumbent responds to ad-hoc questions and analytical taskings from senior DoD, DoN, CNRC leadership as well as from subordinate recruiting regions and districts. This requires the incumbent to acquire both structured and unstructured data in a fast and efficient way, prescribe the proper analytical methodology, and explain their findings concisely to senior leadership. The incumbent is also responsible for various routine analytical products, including reports, briefs, etc. These products require utilization of mathematical and computational programming and data visualization. The incumbent is responsible for the development of new analytical products based on business needs, additions and improvements to existing products, as well as automation of said analytical products.

Other duties as assigned.

1

Encl (14)

## FACTORS

### Factor 1: Knowledge Required By the Position

Knowledge of statistical analysis to include parametric and non-parametric tests of significance--needed to design tests, ensure underlying test assumptions are valid, evaluate results, and ultimately brief problem findings.

Knowledge in mathematical modeling to include regression, classification, and clustering analysis-- needed to develop new or improve existing models resulting in the enhancement of recruiter performance or increased efficiency of recruiting processes. At times, the incumbent will be utilizing these methods to explore market trend analysis, econometric data, and human performance data in order to identify new relationships previously unknown to the organization.

Mastery in at least one of the following mathematical programming languages: R, SPSS, SAS, Python-- needed to design, develop and deploy mathematical models and algorithms, execute statistical significance analysis.

Knowledge of mathematical principles, specifically in applying mathematical logic, judgment, assumptions, and validity challenges--needed to determine appropriate techniques to solve problems and overcome unforeseen barriers, ensuring problems are solved optimally.

Knowledge of various state-of-the-art mathematical methods such as machine learning, boosted modeling, optimization, and neural networks--needed to design, develop and implement problem solutions from strategic research projects.

Knowledge of econometric data sources and the correlations, impact and association between economic factors and recruiting performance--needed to enhance the overall performance of the organization.

Knowledge of simulation design and computer modeling--needed to develop tools to simulate operations and processes; ultimately allowing the organization to explore various methods to increase efficiency and performance.

Knowledge of data manipulation, specifically data joining and scripting--needed to automate report logic and processes.

Knowledge of the Microsoft Office suite in order to present analytical findings in a competent manner.

### Factor 2. Supervisory Controls

The incumbent typically performs research project work. The supervisor provides broad objectives and through collaborative discussion, the superviso· and incumbent will develop problem statements, scope, deadlines, and potential methodologies. The Incumbent is responsible for independently organizing and planning the assigned work, determining appropriate methods and data sources, executing those methods, resolving typical conflicts, and the preparation of required reports and recommendations. Solutions and recommendations are typically accepted as accurate, complete and scientifically sound. Supervisor will review overall findings, recommendations, and analytical assumptions; review of methodological implementation and validity will be minimal.

2

*Encl (14)*

**Factor 3. Guidelines**

The incumbent will have access to a variety of academic reference materials covering various methodologies. However, organizational analytical problems often contain ambiguities and barriers preventing the direct application of academic materials. The incumbent uses analytical judgment and creativity to modify or adapt academic methods in order to fit specific issues and problems. Incumbent will have access to a wide variety of Navy Recruiting Command research studies and research projects. These references can often be used as guide, though are not always directly applicable to current projects.

**Factor 4. Complexity**

The work requires the incumbent to develop innovative approaches to solve complex situations or problems that are vaguely defined and/or scoped. To do this, the incumbent will need to creatively adapt and connect a myriad of mathematical techniques to fit the unique nature of each problem. The incumbent will need to estimate the feasibility and capability of various methodologies and visualize the results from these methodologies in their final form in order to anticipate problems and avoid wasted effort.

Incumbent will be assigned to work special projects requiring mathematical techniques be adapted to specific finance, logistical, marketing, advertising, and economic problems. These special projects often require new ideas and approaches to be successful; some of these special projects will be dedicated to problem statements the organization has never before encountered, or has failed to solve in the past.

**Factor 5. Scope and Effect**

The work involves formulating, interpreting, and exploring new analytical methods and theories that will directly impact the effectiveness of Navy Recruiting Command. Incumbent will collaborate with other Operations Research Analysts within the MPT&E domain to support strategic OPNAV objectives relating to efficient Navy supply chain management and improving fleet manning. Work affects mission performance, labor allocation and resource efficiency and otherwise all aspects of Navy Recruiting-- analyses impacts decision making of OPNAV N1 leadership and CNRC senior leadership. This work will have a profound impact on flag officer decision making as it pertains to recruiting mission performance, health of the force, process improvement, manpower determinations, marketing and advertising strategies, enlistment bonus allocation, and otherwise all aspects of Navy Recruiting.

**Factor 6. Personal Contacts**

The incumbent has contacts with all levels of management within CNRC, Navy Recruiting Region Commodores, Navy Recruiting District (NRD) Commanders and Executive Officers and other field personnel. Incumbent will participate in OPNAV MPT&E business teams developing contacts with OPNAV N1, OPNAV N8, NETC, PMO, and various other non-Recruiting Navy commands. Contacts outside the DoN agency include personnel within Army, Air Force, and Marine Corps recruiting organizations, professionals from private sector, academic institutions and research organizations, and various contractors.

**Factor 7. Purpose of Contacts**

3

*Encl(14)*

The purpose of contacts is to gather requirements for analytical products, and to train or collaborate on analytical problem solving methods. Incumbent may plan work or coordinate work with contacts and will at times, be involved in strategic research efforts with contacts.

**Factor 8. Physical Demands**

The work is sedentary in nature, involving some walking, bending and carrying of light items. Occasional travel away from the duty location may be required (5%).

**Factor 9. Work Environment**

Work is performed in an office setting, which is adequately lighted, heated and ventilated.

**OTHER REQUIREMENTS:**

Must be able to obtain and maintain a Secret clearance.

4

Encl (14)

Standard Form 50
Rev. 7/91
U.S. Offfice of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| DIONNE CHRISTOPHER E | xxx xx data | | 01-06-2019 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code 5-B. Nature of Action | | 6-A. Code 6-B. Nature of Action | |
| 894   Gen Adj | | | |
| 6-C. Code 5-D. Legal Authority | | 6-C. Code 6-D. Legal Authority | |
| QWM   Reg 531.207 | | | |
| 5-E. Code 5-F. Legal Authority | | 6-E. Code 6-F. Legal Authority | |
| ZLM   E.O. 13866, Dated 28-MAR-2019 | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| OPERATIONS RESEARCH ANALYST | OPERATIONS RESEARCH ANALYST |
| 14683-884957 | 14683-884957 |

| 8. Pay Plan | 9.Occ. Code | 10.Grade or Level | 11.Step or Rate | 12. Total Salary | 13.Pay Basis | 16. Pay Plan | 17. Occ. Code | 18.Grade or Level | 19.Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 1515 | 12 | 07 | $88,050.00 | PA | GS | 1515 | 12 | 07 | $89,517.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $76,320.00 | $11,730.00 | $88,050.00 | | $77,390.00 | $12,127.00 | $89,517.00 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| ASSESSMENT, ANALYSIS & INNOVATION DEPT | ASSESSMENT, ANALYSIS & INNOVATION DEPT |
| ANALYSIS DIVISION | ANALYSIS DIVISION |
| NAVY RECRUITING CMD, MILLINGTON, TN | NAVY RECRUITING CMD, MILLINGTON, TN |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Pref for RIF |
|---|---|---|---|---|---|---|
| 1 - None   3 - 10-Point/Disability   5 - 10-Point/Other | | | 0 - None   2 - Conditional | | | |
| 2   2 - 5-Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30% | | | 1   1 - Permanent   3 - Indefinite | | | X  YES    NO |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| Z5 | Basic + Option B (5x) + Option A + Option C (5x) | 9 | Not Applicable | 0 |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|---|
| K | FERS and FICA | 08-08-1991 | F | Full Time | |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 - Competitive Service   3 - SES General | | E - Exempt | | |
| 1   2 - Excepted Service   4 - SES Career | | E   N - Nonexempt | NAVY | 7777 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 471660157 | MILLINGTON / SHELBY / TENNESSEE |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | UIC: 66715 | ORG: N52 | CC: G146 | PAY OFF: CH/LOC ID: |

45. Remarks

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| Chief of Bureau of Naval Personnel (NV22) | Rodney R. Jones |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPERVISORY HR SPECIALIST (INFOSYS) |
|---|---|---|---|
| NV22 | 2417 | 04-12-2019 | |

**TURN OVER FOR IMPORTANT INFORMATION**
5-Part

1 - Employee Copy - Keep for Future Reference

Editions Prior to 7/91 Are Not Usable After
6/30/93
NSN 7540-01-333-8238

*Encl (14)*



**DEPARTMENT OF DEFENSE**
**CONSOLIDATED ADJUDICATIONS FACILITY**
BUILDING 600 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615



June 9, 2020

MEMORANDUM FOR NAVY RECRUITNG CMD, ARLINGTON, ARLINGTON, VA
(ATTN: SECURITY MANAGEMENT OFFICE)

SUBJECT:  Request for Medical Evaluation (Civilian) Re: Mr. Christopher Dionne, 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

References:  (a) DoDM 5200.02, Procedures for the DoD Personnel Security Program (PSP), April 3, 2017
              (b) Security Executive Agent Directive 3, Reporting Requirements for Personnel with Access to Classified Information or Who Hold a Sensitive Position, June 12, 2017
              (c) Security Executive Agent Directive 4, National Security Adjudicative Guidelines, December 10, 2016 (Effective June 8, 2017)

1. The Department of Defense (DoD) Consolidated Adjudication Facility's (CAF) review of the Subject's file and/or additional information in accordance with the above references disclosed security concerns of a medical nature, which fall under the personnel security adjudicative guidelines related to Psychological Conditions. After careful analysis, security concerns remain of a medical nature, which must be resolved before the DoD CAF can make a favorable decision regarding the Subject's eligibility for access to classified information and/or assignment to duties that have been designated national security sensitive and/or access to Sensitive Compartmented Information (SCI). Therefore, the DoD CAF requests that you make arrangements for the conduct of a medical evaluation with emphasis on whether the Subject has a condition that could cause a defect in his/her judgment and/or reliability.

2. Please provide the Subject with the attached Memorandum and have him/her indicate his/her choice on the Acknowledgment of Receipt within thirty (30) calendar days of the receipt of the notification, and return the form to the DoD CAF.  If the Subject consents to the evaluation, provide the attached package to the evaluating physician for review.

3. The evaluation should be conducted by a clinical psychologist or Board-certified psychiatrist affiliated with the U.S. Government. The transmission of the attached package does not constitute a release of that information by the DoD CAF to your organization or to the Subject; rather it is for the sole use of the evaluating medical professional and is provided to aid the evaluating medical professional in making a determination. This package **MAY NOT** be shown to the Subject, to other officials of your organization, nor to a mental health professional not specifically tasked to perform this evaluation. Please protect all materials in accordance with the *Privacy Act of 1974,* the DoDM 5200.02, and/or the ICD 704. To minimize the possibility of loss or inadvertent disclosure to unauthorized persons, please ensure that the attached package is either hand carried or transmitted by receipted mail within your organization's channels to the

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974.    *Encl (15)*

(8)

Updated on: 20180806

evaluating official. Additionally, please ensure that your field elements employ the same procedures in the transmittal of this package to and from the evaluating official.

4. Please complete the Acknowledgement of Receipt of this memorandum and forward to the DoD CAF via the Defense Information System for Security (DISS) portal within thirty (30) calendar days. The results of the medical evaluation must be forwarded to the DoD CAF within sixty (60) calendar days from the date the Subject signs the Acknowledgment of Receipt. Additionally, after the evaluation has been completed, all paper and electronic copies of the accompanying investigative package must be destroyed in a secure manner in accordance with information security procedures. . Upon the DoD CAF's receipt of the results of the medical evaluation, the DoD CAF will review the medical report and all other relevant facts in rendering a security clearance eligibility determination. If you have any questions, please contact the DoD CAF Call Center at commercial (301) 833-3850 or DSN 733-3850 or send a message via the DISS Portal.

## William Livingston   by lf

William Livingston
Division Chief
Adjudications Directorate

Attachments:
1. Subject's Memorandum (w/attachment)
2. Evaluating Board Certified Psychiatrist/Clinical Psychologist Memorandum (w/attachments)

*Encl (15)*

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974.
(9)

Updated on: 20180806



**DEPARTMENT OF THE NAVY**
NAVY RECRUITING COMMAND
5722 INTEGRITY DR
MILLINGTON, TN 38054-5057

5520
SECM
23 Jul 20

FIRST ENDORSEMENT on DODCAF ltr of 9 Jun 20

From: Commander, Navy Recruiting Command
To:   Mr. Christopher E. Dionne  xxx-xx-4035

Subj: REQUEST FOR MEDICAL EVALUATION ICO MR. CHRISTOPHER E. DIONNE

Ref:  (a) NETC HRO E-mail ltr 5520 of 16 Jul 20

1. Forwarded.

2. Request that you sign acknowledging receipt of the "Acknowledgment of Receipt for Request for Medical Evaluation" and return to the Security Management Office here at Navy Recruiting Command NLT 8 August 2020.

3. Due to an administrative oversight and no fault of your own that caused a delay in the delivery of the notification, you were initially notified via E-mail, ref(a). To ensure you have sufficient time to review, the Security Manager contacted DoDCAF to request an extension and it was approved, the new suspense date is now 8 August 2020. Upon acknowledging receipt, you will have an additional sixty (60) calendar days to complete the medical evaluation.

4. If you have any questions or need assistance, do not hesitate in contacting Mr. David F. Smith, NETC Human Resources Officer / Labor and Employee Relation at (502)330-2108

A. D. FRANKLIN
By direction

Copy to:
DODCAF
NETC (HRO, GC)
NRC (NI, SECM, HRO, JAG)

3

*Encl (16)*

**From:** Smith, David F CIV USN NETC HRO PNS FL (USA)
**Sent:** Thursday, August 6, 2020 5:38 PM
**To:** christopher dionne
**Cc:** Smith, David F CIV USN NETC HRO PNS FL (USA)
**Subject:** 8-6-2020 Acknowledged Receipt of Signed Medical Consent Form RE: Consent Form

Mr. Dionne,

Thank you for making all of the efforts you have made in providing NRC with therequested DOD CAF
consent for Medicalexamination. Please use this as an acknowledgement of receipt of your signed Medical Consent
to Examinationform as of 8-6-2020.

Respectfully,


David F. Smith
NETC HRO,
Labor and Employee Relations
121 Cuddihy St. BLDG 680, Suite A
Pensacola, FL 32508-5171
CELL 502-330-2108
(850) 452-8069  DSN 459-8069
Fax (850) 452-8710

*Ex ( 17)*

The message sender has requested a read receipt. To send a receipt, <u>click here.</u>

DARIN, KENNETH R CIV (USA) <kenneth.r.darin1@navy.mil>
Thu 2/4/2021 2:24 PM

To:

- You

Cc:

- Knauss, Phillip CIV USN COMNAVCRUITCOM MIL (USA);
- Leondaridismena, Nickos LT USN COMNAVCRUITCOM MIL (USA)

Mr. Dionne,

I hope this email finds you doing well.  I have good news to pass:  Yesterday, 3 February, DoDCAF completed its review and re-adjudicated you eligible at the Secret level.  This means your security investigation is complete, and you were returned to a pay status effective yesterday, 3 February.  NRC is presently processing the paperwork and taking necessary actions to have a return to work SF-50 issued, turn your pay turned back on, etc..  The bottom line is your indefinite suspension is terminated and you can return to work at the NRC tomorrow, Friday, 5 February.

I also have other relevant news to pass, NRC has affected a management directed reassignment to move you to the Business Analytics N2 department.  Please note I have copied Phillip Knauss and LT Nickolas Leondaridis-Mena on this email, Mr. Knauss is now your reporting senior and LT Leondaridis-Mena is your supervisor in the Business Analytics (N2) department.

Mr. Knauss would like for you to return to work at 0730, Friday, 5 February, and to report to his office, Room 032 in the Business Analytics (N2) Department of NRC HQ when you arrive.  Mr. Knauss or LT Leondaridis-Mena will communicate

directly with you to insure you have building access, share COVID building entry
requirements, etc. later today.  These gentlemen will be your points of contact
related to your return to work moving forward.  If you have any questions
regarding the above, you may email Mr. Knauss, LT Leondaridis-Mena, or myself,
as we are standing by to assist you.  Have a great rest of your day!

V/R
Ken

Kenneth R. DaRin, M.S.
HR Specialist
Human Resources Office|Labor & Employee Relations
Naval Education and Training Command
121 Cuddihy St., Bldg. 680, Suite A
Pensacola, FL 32508-5171
Teleworking
Cell 757.408.7678
FAX 850.452.3978

For OFFICIAL USE ONLY - PRIVACY ACT OF 1974 AS AMENDED APPLIES.  This e-
mail and attached files may contain Privacy Sensitive information.  Any misuse or
unauthorized disclosure may result in both civil and criminal penalties.  If you
have received this document in error, please notify me at the above telephone
number and destroy the document immediately in accordance with Privacy Act
procedures.  "This signature line and my digital signature is the equivalent of a
hard copy signature, serving to authenticate that I have the authority to send this
e-mail and to indicate I have consciously decided that it should have the same
legal authority normally accorded to an actual hard copy signature."

Enclosure

(1)



**DEPARTMENT OF THE NAVY**
OFFICE OF THE GENERAL COUNSEL
1000 NAVY PENTAGON
WASHINGTON DC 20350-1000

March 15, 2021

Via email to chr892@hotmail.com

Christopher Dionne
7467 High Seas Drive
Millington, TN  38053

SUBJECT: FREEDOM OF INFORMATION ACT APPEAL DON-NAVY-2021-003368

Dear Mr. Dionne:

I am responding to your Freedom of Information Act (FOIA) appeal dated February 8, 2021, received in this office on February 18, 2021, arising from your three FOIA requests, identified in FOIA online as:

*DON-NAVY-2021-002417: 1.  On 8 Oct 2019 the Navy Recruiting Command (NRC) had security remove me from the command after suspending my access to classified material.  2. The NRC placed me into an Proposed Indefinite Suspension Status.  3.  The NRC refused to present any evidence for the removal.  4.  There were no charges, crimes, indictments, security violations, formal counselling's and/or informal counselling's.  5.  There is nothing derogatory in my personal files.    6.  I respectfully request the documentation that authorized my removal.  7.  I respectfully the evidence for my removal.*

*DON-NAVY-2021-002744: 1.  Ref: (a) NRC JAG Redacted FOIA Information dated 25 Sep 2020.  2. Ref: (b) CNRC Memorandum dated 8 Oct 2019.  3.  I believe that the NRC JAG provided all the information that he has regarding my case, Ref (a).  3.  However, my questions regarding evidence are still unanswered.  Perhaps, I was not specific enough in my past questions.  Thus, I will now use the exact wording in Ref: (b) for the following FOIA requests.  4.  I request the following facts and evidence though FOIA entitled to me under 5 CFR 7513.  5.  Ref (b), paragraph 2, first sentence states, "This decision is made on the basis of facts now known facts to include a pattern of behavior that reflects potential questionable judgement, trustworthiness and reliability."  Please provide the specific substantiated facts and evidence in Reference (a) and/or any other reference that supports this accusation.  6. Ref (b) paragraph (2), second sentence states, "specific concerns include statements to coworkers that evidence your increasing hostility to your supervisors and leadership;" Please provide the specific substantiated evidence in Reference (a) and/or any other reference that supports this accusation. 7. Ref (b) paragraph (2), second sentence continued, "and statements and evidence that indicate you may cause or may be planning to cause physical harm in the Navy Recruiting Command workplace."  Please provide the specific substantiated evidence in Reference (a) and/or any other reference that supports this accusation..*

$Encl. (A)$

*DON-NAVY-2021-002745: This is a continuation of DON-Navy-2021-002744. 1. Ref: (a) NRC JAG Redacted FOIA Information dated 25 Sep 2020. 2. Ref: (b) CNRC Memorandum dated 8 Oct 2019. 3. I believe that the NRC JAG provided all the information that he has regarding my case, Ref (a). 3. However, my questions regarding evidence are still unanswered. Perhaps, I was not specific enough in my past questions. Thus, I will now use the exact wording in Ref: (b) for the following FOIA requests. 8. Ref (b) paragraph (3) states, "My decision to suspend your access to classified information and sensitive national security information has been made in the interests of national security." By DoD definition national security interests may be defined as, "The foundation for the development of valid national objectives that define US goals or purposes. National security interests include preserving US political identity, framework, and institutions; fostering economic well-being; and bolstering international order supporting the vital interests of the United States and its allies (US DoD)." Please provide the specific substantiated evidence in Reference (a) and/or any other reference that supports this accusation regarding national security interests. 9. Ref (a ) paragraph (3) states, "as a result of my loss of confidence in your judgement, reliability, and trustworthiness and your willingness to comply with laws, rules and regulations." Please provide the specific substantiated evidence in Reference (b) and/or any other reference that supports this accusation.*

On January 28, 2021, Commander, Naval Recruitng Command, the Initial Denial Authority (IDA), combined your three requests into a single action, and advised you that, following searches made pursuant to your requests as framed in FOIAonline, no records could be located for any of the three requests. You appealed, then, on February 8, 2021, also combining the three requests into one appeal, asserting that the searches for responsive records were not adequate under the standards of the FOIA.

Upon receipt of your appeal, a member of my staff discussed these matters with the IDA's FOIA staff, who explained to my staff the nature of the searches, who conducted them, what records were searched, and what search terms were used. The IDA staff explained that no responsive records were found.

The adequacy of an agency's search for information requested under the FOIA is determined by a "reasonableness" test. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). Generally, an agency must undertake a search that is reasonably calculated to locate the requested information. *Kowalczyk v. Department of Justice*, 73 F.3d 386, 388 (D.C. Cir.1996). The mere speculation that requested documents exist does not undermine the finding that the agency conducted a reasonable search. *Wilbur v. C.I.A.*,355 F.3d 675, 678 (D.C. Cir. 2004) ("Likewise, the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records."). Here, the IDA conducted a search pursuant to each of your requests but was unable to locate responsive records in any of the searches. The IDA described to my staff details concerning each search that constitute a reasonable search in each case under the FOIA, including who conducted the search, the qualifications of those who conducted them, the

2

19

Case 2:23-cv-02531-JTF-cgc   Document 1   Filed 08/25/23   Page 74 of 90
PageID 74

↩ Reply   ∨    🗑 Delete   ⊘ Junk   Block   ⋯

# Your FOIA request of 22 September 2021

⊗ The digital signature on this message can't be verified. This message has a digital signature, but it wasn't verified because the S/MIME extension isn't installed. Please contact your IT administrator for help installing the extension.

ⓘ You forwarded this message on Fri 12/3/2021 11:11 PM

Pagan, Carlos A LT USN NETC PENSACOLA FL (USA)                    ↩  ↞  ↗  ⋯
<carlos.a.pagan10.mil@us.navy.mil>

To: You                                                          Tue 11/23/2021 4:47 PM
Cc: Schultheiss, Kimi K LCDR USN NETC PENSACOLA FL (USA);  Seith, Kimberly Ann CI

Dear Mr. Dionne:

This responds to your September 22, 2021, Freedom of Information Act (FOIA) request DON-NAVY-2021-010723 seeking "the Decision Memorandum used to suspend your access to classified material on or about 8 Oct 2019. On November 4, 2021, Naval Education and Training Command (NETC) responded to your request stating the documents you were requesting were held by the Defense Counterintelligence and security Agency (DCSA).

On November 6, 2021, you submitted an appeal to your original FOIA Request to the Office of General Counsel.

On November 9, 2021, you submitted an email clarifying your request stating that you were not requesting the Defense Counterintelligence Security Agency (DCSA) Memorandum regarding your security adjudication investigation. Instead, you were requesting the "Decision Memorandum" that should be in your case file, and had reason to believe NETC has cognizance over said case file and that the "Decision Memorandum" should have the case, evidence, the analysis and the decision.

A search of our collective databases located one "Security Incident Report ICO Mr. Christopher E. Dionne, Civilian (GS-12) of 7 Oct 19 conducted by Navy Recruiting Command Director of Security, N00 AT/SECM responsive to your request. Therefore, on November 22, 2021, the Office of General Counsel has remanded your request to Navy Recruiting Command for their review/release determination and direct response to you.

You have the right to seek dispute resolution services. You may contact the Department of the Navy's FOIA public liaison, Mr. Chris Julka, at christopher.a.julka@navy.mil or (703) 697-0031 or the Office of Government Information Services (https://ogis.archives.gov/).

If you have any questions regarding this matter, please contact us at kimberly.a.seith.civ@us.navy.mil or (850) 452-4847.

Very Respectfully,

Carlos Andrés Pagán
LT, JAGC, USN
Assistant Force Judge Advocate
Naval Education and Training Command
250 Dallas Street

Encl (2)

**From:** Sullivan, Kevin D CIV USN COMNAVCRUITCOM MIL (USA) <kevin.d.sullivan10.civ@us.navy.mil>
**Sent:** Friday, April 14, 2023 3:45 PM
**To:** Dionne, Christophe E CIV (USA) <christophe.e.dionne.civ@us.navy.mil>
**Cc:** Reyes, Ronel C CAPT USN COMNAVCRUITCOM MIL (USA) <ronel.c.reyes.mil@us.navy.mil>
**Subject:** RE: Ms. Patricia Hickman

Mr. Dionne,

Below I have provided responses to your questions. My below responses are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are controlling.

You will also receive written response to the grievances you filed on: 22, 27 Feb, and 2, 6, and 10 Mar 23.

I have included a question I need you to review and respond to at the bottom of my email.

Responses to your questions:

1.  Am I going to be the subject more of Ms. Patricia Hickman's malicious lies similar to the one about me I following her to the car in the parking lot (that I do not use), leaning against the car and staring at her.

    RESPONSE: You should expect that your actions and statements will continue to be reviewed utilizing the same rules, standards and policies as would the statements and actions of any other NRC civilian employees in similar circumstances. You have not been subjected to malicious lies as you allege, this is your subjective belief and opinion about matters that occurred almost four (4) years ago and were timely reported and documented. **I do not concur. I never followed Ms. Patricia Hickman to her car in the parking lot and stared at her. I never came to a boxer's stance flushed red with anger and repeatedly chanted EXERCISE EXTREME CONTROL. I discovered these allegation thru FOIA. I should have been immediately confronted regarding these allegations. Therer was no timeliness if the NRC never confronted me. I do not concur that this command was consistent with laws, rules and regulations.**

    It is Navy and NRC policy that any employee who has a security concern should forward such matters to their supervisor or the appropriate person(s) in their chain of command for review and appropriate action (**verification, investigation, etc.**). Evidence of your earlier actions and statements were appropriately reported and were thereafter appropriately reviewed and acted on by command personnel. **So there were adverse allegations made against me and no one confronted me? If no command personal confronted me then the allegations were not true and should not have been used to suspend my access to classified material. Who verified that I waited for Ms. Patricia Hickman in the parking lot. Who verified that I was in the hallway chanting EXERCISE EXTREME CONTROL? Who investigated that I followed Ms. Patricia Hickman to her car, leaned against it and stared at her. Who investigated that I was in the hall repeatedly chanting EXERCISE EXTREME CONTROL? I have the 7 Oct 2019 Security Incident Report. I do not see any evidence of the foregoing. If these allegations were true, I should have been charged. If these allegations were unsubstantiated or false the matter should have been closed. This was targeting. Accordingly. I will submit a FOIA request for this information.**

2.  Am I going to be accused of repeatedly chanting EXERCISE EXTREME CONTROL in a boxer's stance, flushed red with anger when she sees me?

*End (21)*

RESPONSE:  You should expect that your actions and statements will continue to be reviewed utilizing the same rules, standards and policies as would the statements and actions any other NRC civilian employees in similar circumstances. It is Navy and NRC policy that any employee who has a security concern should forward such matters to their supervisor or the appropriate person(s) in their chain of command for review and appropriate action (**verification, investigation, etc.**). Evidence of your earlier actions and statements were appropriately reported and were thereafter appropriately reviewed and acted on by command personnel. **What about Ms. Patricia Hickman's actions?  What about confronting me if anyone civilian employee makes adverse statements against me?**
Your question relates to a matter that occurred almost four (4) years ago. **The statute for false and misleading statements in 5 years.  I have been fighting this case since 8 Oct 2019.  To date I have never been allowed to review and reply to the material used against me.  It was omitted from my case file  This was a direct  violation to 5 USC 7513.  Concealing evidence is a direct violation to 18 USC Section 1001.**

3.    Am I going to be suspended from the base again for allegedly saying that I am going "to shoot the place up?"

RESPONSE:  You should expect that your actions and statements will continue to be reported for review and appropriate action utilizing the same rules, standards and policies as would the actions or statements of any other NRC civilian employees in similar circumstances. You should be cognizant of how people may understand and perceive the statements you may make and the actions you may take. One recent example of a written statement you made that raised a concern regarding whether you have thoughts regarding or may intend to cause harm in the workplace is paragraph two of your 20 Jan 23 Letter requesting reimbursement (which was most recently provided to NRC as Enclosure (1) to your grievance request dated 2 Mar 23). In paragraph two of your 20 Jan 23 letter you expressly reference the Houston shooting involving a recruiter who killed his wife and died in a gun battle with police.  After referencing the Houston recruiter shooter you then state that unspecified circumstances and events probably lead to the tragic shooting and opine that "illegally targeting could contribute to such actions".  Thereafter you included a disclaimer in an attempt to resolve any potential concerns that logically follow from your comparison of your alleged situation to one that might result in gun violence and the killing of other persons.  Your specific words of disclaimer were, "Do not worry, I have no intention to harm myself or others in any way."  Mr. Dionne if you have no intention of harming yourself or others and if there is no threat that should be associated with your words, then why did you choose to:  a. write those words, b. make the comparison of your alleged situation to one that could result in gun violence and the killing of others, include such matters in a letter to NRC seeking reimbursement, and d.  feel it necessary to include a disclaimer to allay potential concern about your written statements. The disclaimer you included in the letter is evidence that you knew the import and significance of your words and your comparison of the alleged wrong you claim to have endured with stresses that could result in someone in engaging gun violence and killing of others.  You purposefully included the disclaimer, the statements about the Houston shooting and comparison of causal stressors in your letter and it appears you included all of these because you expressly wanted to imply a threat and impart just how serious you assess the situation (so serious it could provoke violence and killing of others).  As noted above, you should expect that your actions and statements will continue to be reviewed utilizing the same rules, standards and policies as would the actions or statements of any other NRC civilian employees in similar circumstances, and if you act or make statements that are perceived as threatening NRC personnel are trained and expected to report such matters for review and appropriate action. ?**Apparently, you are trying to turn back my sincere effort to show the potential effects of targeting on someone who may have personnel issues and/or may not able to survive 15.07 months without pay and benefits.  I was trying to show that who do not have the means to survive 15.07 months  those issues.  If you any have further concerns, I would be more than glad to discuss them at your convenience.  Respectfully, please the full reimbursement letter.**

Encl (21)

**Respectfully, are your comments regarding the Reimbursement Cover Letter where I made a sincere effort to show the potential harmful effect of targeting, an implied threat, that you are going to suspend my access to classified material again? I take it as such. Accordingly, I will contact the Office of Special Counsel for a legal determination.**

4. Now, that I placed a targeting, a surveillance and two felony charges (for providing false and misleading statements to a federal legal authority) against her, will she once again try to retaliate with even more malicious false and misleading statements to attack my security clearance?

RESPONSE: You remain focused on matters that occurred almost four (4) years ago. **The statutes of limitations for False and Misleading Statements is 5 years. I remain focused because there was no evidence and facts to support my suspension; I was never allowed to review/reply to the material used against me, that material was not in my case file; the NRC denied my right to appeal.** Your subjective opinions regarding your access suspension and subsequent indefinite suspension are not support by the facts. **My opinions were not subjective. The Office of General Counsel's 15 Mar 2021 reply clearly stated that there were no responsive documents to my requests for the facts and evidence claimed by Rear Admiral McLane that I may cause or may be planning to cause physical harm at the Navy Recruiting Command. NETC FOIA Response on/about 7 Dec 2021 was the material used to suspend my access to classified material, the NRC never showed me this material and still refuses to do so. There was an interview but not an appeal.**

the reply The facts, policy and regulations considered by the Commander and Deciding Officials in reaching their respective decisions have been explained to you, repeatedly, but you choose to not accept the information you have been provided and to instead continue to assert your subject beliefs and opinion that you have been the subject of a conspiracy of retaliatory actions effected by an ever widening group of persons. **Who explained them to me? I chose to get the facts and evidence. I use FOIA to do so.**

It is not expected that Ms. Hickman or any other employee at NRC will retaliate against you or any other employee at NRC for raising workplace concerns, any such action would be against Navy and NRC policy. If any NRC employee to include yourself reports a concern of retaliation or reprisal to NRC it will be appropriately reviewed in accordance with Navy and NRC policies. **The attachments explain my past complaints.**

5. Is Ms. Patricia Hickman going to collude with Mr. Steve Hickman again in an effort to get my access to classified material suspended?

RESPONSE: NRC is not aware of any facts that substantiate your subjective belief and opinion that Ms. Hickman and Mr. Hickman have colluded against you at any time. Read the emails between NRC will continue to take appropriate actions to protect personnel and national security as noted in responses # 1-3 above and to review and response to allegations of retaliation or reprisal as noted in response #4 above. **Please read the attachments.**

6. Will Ms. Patricia Hickman continue to disclose false and misleading statements IRT my personal work logbooks including statements regarding the following subjects?
   (1) Anger
   (2) Self-Hatred
   (3) Violence
   (4) Sending unclassified material to Saudi Arabia
   (5) Russian/Ukrainian Girlfriend, was she gook looking (lol)?
   (6) Dealing with an international bank. In this case, I sent $100 to long term friend for a Baby Alive doll for her niece. It is a good thing that Ms. Patricia Hickman did not know that the money was for a young Malaysian girl. If she did, then I probably would have been accused of sex trafficking preteen Asians girls!

*Encl (21)*

RESPONSE:  NRC is not aware of any facts that substantiate your subjective belief or opinion that Ms. Hickman has made false and misleading statements regarding your personal work logbooks or their contents.  **This is a lie!  The NRC was aware that Ms. Patricia Hickman disclosed the contents of my work logbooks to the Naval Personal Command (NPC).  I enclosed the NPC investigation in the reimbursement letter.  This is where Patricia Hickman accused me of calling Child Protective Services on her and that I was going t6o take vengeance upon her.**  The NRC has no additional comment or response regarding your summary of the content of the logbooks.

7.    Now that Ms. Patricia Hickman had to return my personal work logbooks, with 405 tabs and adverse notes, could this prompt her to lose self-control?

RESPONSE:  NRC will continue to review the actions and statements of all employees that may raise personnel or other security concerns utilizing the same rules, standards and policies.

MATTER FOR YOUR RESPONSE:  You assert that thirty-six (36) Skillcraft flip-top/spiral bound notebooks are your personal property containing your personal writings.

QUESTION:  Where, when, and how did you personally procure the thirty-six (36) Skillcraft flip-top/spiral bound notebooks, which appear to be the same type notebooks provided by NRC for service members and government employees to complete their government assigned work, that you claim to be your personal property containing your personal writings?

**I procured my skill craft work log books by requesting them from whoever was handling office supplies.  I have been using such notebooks since 2009.  I use these notebooks for time management, thoughts, observations, plans and personal comments.  I understand that these are government logbooks that were given to me for my use.  Once in my possession, I consider the contents to be private.  However, I interpose no objection in disclosing the contents to anyone.  However, if anyone seizes the notebooks that are in my ownership without my permission and uses the contents against me, then I expect to be confronted.  That would be consistent with DoD laws, rules and regulations. The fact that NETC OGC had to direct the NRC to take possession of the my personal work logbooks that were  in Ms. Patricia Hickman's Possession and transferred ownership to me, indicated that Ms. Patricia Hickman had my personal property in her possession that was lawfully mine.**

**While I further understand that I have no expectation to privacy, I contend that there is a legal and an illegal way to seize property in my .  When I discovered that Ms. Patricia Hickman requested that excerpts from the notebooks be placed in the 7 Oct 2019 Security Incident Report, I emailed Mr. John Perales and requested that he remove the notebooks from the bottom of my left drawer.  I can only say good things about Mr. Pearles, he has always been professionally supportive.**

**In summary, the NRC used the Security Adjudication process to target my security clearance in an attempt to remove me from federal service.  Here are the facts, not my opinion.**

1.    **There were no facts and/or evidence to support my suspension to classified material.**
2.    **The NRC refuses to allow me the material to review/reply to the material used to suspend  my access to classified material (case file).  It was not in the case file.   Thius was a direct violation of 5 USC 7513.   Concealing this material was also a direct violation of 18 USC Section 1001.**
3.    **There was no appeal.**

**V/R**
**Christopher Dionne**

*Encl(21)*

V/r,
Kevin

Dr. Kevin Sullivan
Executive Director
Navy Recruiting Command
901-874-9005

For Official Use Only / Privacy Sensitive: Information contained within this document or its attachments may contain personal information, disclosure if which is generally prohibited by the Privacy Act (5 U.S.C.552a). Release of such protected information outside of DoD is prohibited. Any misuse or unauthorized access may result in civil and criminal penalties.

**From:** Dionne, Christophe E CIV (USA) <christophe.e.dionne.civ@us.navy.mil>
**Sent:** Wednesday, April 12, 2023 9:23 AM
**To:** ronel.reyes@navy.mil; Sullivan, Kevin D CIV USN COMNAVCRUITCOM MIL (USA) <kevin.d.sullivan10.civ@us.navy.mil>
**Cc:** Green, Clifford E CIV USN (USA) <clifford.green@navy.mil>; Knauss, Phillip CIV USN COMNAVCRUITCOM MIL (USA) <phillip.knauss2.civ@us.navy.mil>; Hickman, Steven P CIV USN COMNAVCRUITCOM MIL (USA) <steven.p.hickman.civ@us.navy.mil>
**Subject:** Ms. Patricia Hickman

Gentlemen,

I noticed that Ms. Patricia Hickman is back in the building. Ms. Patricia Hickman's past actions, described in great detail in the past correspondence, demonstrates either an emotionally disturbed individual or a malicious liar who targets individuals with false and/or misleading statements. I contend that Ms. Patricia Hickman's history of irrational behavior clearly indicates an unstable personality that could elevate to a security risk at this command. I say this in all seriousness. I have the following questions.

1. Am I going to be the subject more of Ms. Patricia Hickman's malicious lies similar to the one about me I following her to the car in the parking lot (that I do not use), leaning against the car and staring at her.
2. Am I going to be accused of repeatedly chanting EXERCISE EXTREME CONTROL in a boxer's stance, flushed red with anger when she sees me?
3. Am I going to be suspended from the base again for allegedly saying that I am going "to shoot the place up?"
4. Now, that I placed a targeting, a surveillance and two felony charges (for providing false and misleading statements to a federal legal authority) against her, will she once again try to retaliate with even more malicious false and misleading statements to attack my security clearance?

*Encl (21)*

5. Is Ms. Patricia Hickman going to collude with Mr. Steve Hickman again in an effort to get my access to classified material suspended?

6. Will Ms. Patricia Hickman continue to disclose false and misleading statements IRT my personal work logbooks including statements regarding the following subjects?

(1) Anger

(2) Self-Hatred

(3) Violence

(4) Sending unclassified material to Saudi Arabia

(5) Russian/Ukrainian Girlfriend, was she gook looking (lol)?

(6) Dealing with an international bank. In this case, I sent $100 to long term friend for a Baby Alive doll for her niece. It is a good thing that Ms. Patricia Hickman did not know that the money was for a young Malaysian girl. If she did, then I probably would have been accused of sex trafficking preteen Asians girls!

7. Now that Ms. Patricia Hickman had to return my personal work logbooks, with 405 tabs and adverse notes, could this prompt her to lose self-control?

This case is far bigger than me. **If Ms. Patricia Hickman targeted a government service employee who could not defend himself/herself and could not go 15.07 months without pay and allowances, then that person's life would have been destroyed, all because Ms. Patricia Hickman was mad.** Although, I am not a medical authority, I believe that Ms. Patricia Hickman exhibits the personality traits of a clinical psychopath (not the movie kind). Ms. Hickman shows no remorse for her actions, she cannot control her emotions, she cannot control her actions, she viciously lies to target individuals and she doubles down on her lying when she gets caught.

I believe that every government service employee should be treated with dignity and respect. I received neither. I would settle for being treated fairly according to the law.

V/R
Christopher Dionne

| Reply

Forward

**From:** Hogan, Michael J CIV USN COMNAVCRUITCOM MIL (USA) <michael.j.hogan1.civ@us.navy.mil>
**Sent:** Friday, June 30, 2023 7:08 PM

Encl (21)

**To:** christopher dionne <chr892@hotmail.com>
**Cc:** Reichardt, Kelsey M LCDR USN COMNAVCRUITCOM MIL (USA)
<kelsey.m.reichardt.mil@us.navy.mil>; Hathaway, Girija LT USN COMNAVCRUITCOM MIL (USA)
<girija.hathaway.mil@us.navy.mil>; Turner, Ryan Thomas LCDR USN COMNAVCRUITCOM MIL (USA)
<ryan.t.turner.mil@us.navy.mil>; ann.bruck@navy.mil <ann.bruck@navy.mil>; Lawrence, Marcus S Jr
CIV USN NETC PENSACOLA FL (USA) <marcus.s.lawrence.civ@us.navy.mil>; Julka, Christopher A CIV USN
DONCIO WASHINGTON DC (USA) <christopher.a.julka.civ@us.navy.mil>; Seith, Kimberly Ann CIV USN
NAS PENSACOLA FL (USA) <kimberly.a.seith.civ@us.navy.mil>; Green, Clifford E CIV USN (USA)
<clifford.e.green.civ@us.navy.mil>
**Subject:** FREEDOM OF INFORMATION ACT REQUEST DON-NAVY-2023-009309

Dear Mr. Dionne,

This letter is in response to a
Freedom of Information Act (FOIA) with an assigned tracking
number DON-NAVY-2023-009309 dated April 22, 2023. This command
received your request on June 30, 2023. Your request is:

1.  On/about 26 June 2019, Ms. Patricia Hickman filed a
Memorandum for the Record (MFR) at the Navy Recruiting Command,
that I waited for her in the parking lot, followed her to the
car and stared at her.  I discovered this MFR thru FOIA.  Now, I
respectfully request any verification / investigation regarding
this MFR.  I do have the 7 Oct 2019 Security Incident Report
containing this MFR, so if the verification/investigation is in
this report, citing the page number would suffice as a response.

2.  On/about 7 August 2019, Ms. Patricia Hickman informed the
NRC's Executive Director that I was in the hallway repeatedly
chanting EXERCISE EXTREME CONTROL.  Consequently, the NRC's
Executive Director asked the NRC's Security Manager to look into
the matter (paraphrase) and report back to him.  I discovered
this information in the 7 Oct 2019 Security Incident
Report.  Now, I respectfully request the
verification/investigation regarding this matter.   I do have
the 7 Oct 2019 Security Incident Report containing this MFR, so
if the verification/investigation is in this report, citing the
page number would suffice as a response.

A search was conducted and no responsive documents were found.

All fees have been waived.

*Encl (2)*

I am the official responsible for your request.  If you have any
questions, please contact me at the number located below right-
hand side.

You have the right to an appeal. It must be received (i.e.,
post-marked if by mail, sent if by email, submitted if by
FOIAonline) within 90 calendar days from the date of this
letter. Please provide the appeal authority (see below) the
following in an envelope marked "FOIA appeal":
  • a letter requesting an appeal that explains what you are
    appealing with any supporting arguments or reasons you think may
    be worthy of consideration;
  • a copy of your initial request;
  • a copy of the letter of denial.
Also, please provide me a copy of your appeal letter.

There are two ways to file an appeal—through FOIAonline or by
mail.

1. Through FOIAonline.  This will work only if you set up an
account on FOIAonline before you make the request that you would
like to appeal.  To set up an account, go to FOIAonline (this is
a website that will appear as the top hit if you search the
internet for "FOIAonline"), click "Create Account" (a link
located within the blue banner at the top in the upper right
corner), enter your data into the field that subsequently
appears, and click "Save" (at the bottom left of the
screen).  With your account thereby created, you will have the
power to file an appeal on FOIAonline to any request you file on
FOIAonline thereafter.  To do so, locate your request (enter a
keyword or the request tracking number in the "Search for" field
on the "Search" tab), click on it, then the "Create Appeal" tab
in the left-hand column. Complete the subsequent field, click
"Save," and FOIAonline will submit your appeal.

2. By mail. Address your appeal to:

The Judge Advocate General (Code 14) 1322 Patterson Avenue SE,
Suite 3000, Washington Navy Yard, DC 20374-5066

[Note: the preceding address is
the default address. Alternatively, it may be sent to the
Department of the Navy General Counsel if appropriate
(the Office of the General Counsel generally handles issues
outside of those of the uniformed service).   That address is
as follows:

*Encl (21)*

Department of the Navy, Office of the General Counsel, 1000 Navy
Pentagon, Room 5A532 Washington, DC 20350-1000]

If you have any questions, please contact me.  You may also
contact the DON FOIA Public Liaison, Christopher Julka,
at christopher.a.julka.civ@us.navy.mil, (703)697-0031.  In
addition, the Office of Government Information Services (OGIS)
provides a voluntary mediation process for resolving disputes
between persons making FOIA requests and the Department of the
Navy (DON).  For more information, go
to https://www.archives.gov/ogis/about-ogis/contact-
information.

Sincerely,


Michael Hogan
Legal Determination Program Manager
Freedom of Information Act (FOIA) Officer
GS-09 Paralegal Specialist
Staff Judge Advocate's Office
Navy Recruiting Command

CONFIDENTIALITY NOTICE:  This email message and any attachments
are intended only for the person or entity to which it is
addressed, and may contain confidential or privileged protected
from disclosure under the Freedom of Information Act, 5 USC
552.  Any unauthorized review, use, disclosure, or distribution
is prohibited.  If you are not the intended recipient,
please contact the sender by reply email and destroy all copies
of the original message.  If you are the intended recipient, but
do not wish to receive communications through this medium,
please advise the sender immediately

Controlled by:  Department
of the Navy
Controlled by:  Navy
Recruiting Command, 00J
CUI
Category:  FOIA/PRVCY/PERS/LEGAL/MIL
Distribution/Dissemination:
FEDCON
POC: Michael
Hogan, michael.j.hogan1.civ@us.navy.mil, 901-874-9136

*Encl(21)*

Hogan, Michael J CIV USN COMNAVCRUITCOM MIL (USA) <michael.j.hogan1.civ@us.nav
y.mil>

☐
☐
☐
☐

To:

● You

Cc:

● Reichardt, Kelsey M LCDR USN COMNAVCRUITCOM MIL (USA)

+7 others

Fri 6/30/2023 7:11 PM

Dear Mr. Dionne,

This letter is in response to a
Freedom of Information Act (FOIA) with an assigned tracking
number DON-NAVY-2023-009309 dated April 22, 2023. This command
received your request on June 30, 2023. Your request is:

1.  On/about 26 June 2019, Ms. Patricia Hickman filed a
Memorandum for the Record (MFR) at the Navy Recruiting Command,
that I waited for her in the parking lot, followed her to the
car and stared at her.  I discovered this MFR thru FOIA.  Now, I
respectfully request any verification / investigation regarding
this MFR.  I do have the 7 Oct 2019 Security Incident Report
containing this MFR, so if the verification/investigation is in
this report, citing the page number would suffice as a response.

2.  On/about 7 August 2019, Ms. Patricia Hickman informed the
NRC's Executive Director that I was in the hallway repeatedly
chanting EXERCISE EXTREME CONTROL.  Consequently, the NRC's
Executive Director asked the NRC's Security Manager to look into
the matter (paraphrase) and report back to him.  I discovered
this information in the 7 Oct 2019 Security Incident
Report.  Now, I respectfully request the
verification/investigation regarding this matter.   I do have
the 7 Oct 2019 Security Incident Report containing this MFR, so
if the verification/investigation is in this report, citing the
page number would suffice as a response.

A search was conducted and no responsive documents were found.

All fees have been waived.

I am the official responsible for your request.  If you have any
questions, please contact me at the number located below right-
hand side.

Encl (20)

You have the right to an appeal. It must be received (i.e., post-marked if by mail, sent if by email, submitted if by FOIAonline) within 90 calendar days from the date of this letter. Please provide the appeal authority (see below) the following in an envelope marked "FOIA appeal":

- a letter requesting an appeal that explains what you are appealing with any supporting arguments or reasons you think may be worthy of consideration;
- a copy of your initial request;
- a copy of the letter of denial.

Also, please provide me a copy of your appeal letter.

There are two ways to file an appeal—through FOIAonline or by mail.

1. Through FOIAonline.  This will work only if you set up an account on FOIAonline before you make the request that you would like to appeal.  To set up an account, go to FOIAonline (this is a website that will appear as the top hit if you search the internet for "FOIAonline"), click "Create Account" (a link located within the blue banner at the top in the upper right corner), enter your data into the field that subsequently appears, and click "Save" (at the bottom left of the screen).  With your account thereby created, you will have the power to file an appeal on FOIAonline to any request you file on FOIAonline thereafter.  To do so, locate your request (enter a keyword or the request tracking number in the "Search for" field on the "Search" tab), click on it, then the "Create Appeal" tab in the left-hand column. Complete the subsequent field, click "Save," and FOIAonline will submit your appeal.

2. By mail. Address your appeal to:

The Judge Advocate General (Code 14) 1322 Patterson Avenue SE, Suite 3000, Washington Navy Yard, DC 20374-5066

[Note: the preceding address is
the default address. Alternatively, it may be sent to the Department of the Navy General Counsel if appropriate (the Office of the General Counsel generally handles issues outside of those of the uniformed service).   That address is as follows:

Department of the Navy, Office of the General Counsel, 1000 Navy Pentagon, Room 5A532 Washington, DC 20350-1000]



If you have any questions, please contact me.  You may also contact the DON FOIA Public Liaison, Christopher Julka, at christopher.a.julka.civ@us.navy.mil, (703)697-0031.  In addition, the Office of Government Information Services (OGIS) provides a voluntary mediation process for resolving disputes between persons making FOIA requests and the Department of the Navy (DON).  For more information, go to https://www.archives.gov/ogis/about-ogis/contact-information.

Sincerely,


Michael Hogan
Legal Determination Program Manager
Freedom of Information Act (FOIA) Officer
GS-09 Paralegal Specialist
Staff Judge Advocate's Office
Navy Recruiting Command

CONFIDENTIALITY NOTICE:  This email message and any attachments are intended only for the person or entity to which it is addressed, and may contain confidential or privileged protected from disclosure under the Freedom of Information Act, 5 USC 552.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.  If you are the intended recipient, but do not wish to receive communications through this medium, please advise the sender immediately

Controlled by:  Department
of the Navy
Controlled by:  Navy
Recruiting Command, 00J
CUI
Category:  FOIA/PRVCY/PERS/LEGAL/MIL
Distribution/Dissemination:
FEDCON
POC: Michael
Hogan, michael.j.hogan1.civ@us.navy.mil, 901-874-9136

Encl (20)

## RE: Follow up

Dionne, Christophe E CIV (USA) <christophe.e.dionne.civ@us.navy.mil>
Thu 8/17/2023 7:48 PM
To:chr892@hotmail.com <chr892@hotmail.com>

**From:** Ryan, Frank J III CDR USN COMNAVCRUITCOM MIL (USA) <frank.j.ryan.mil@us.navy.mil>
**Sent:** Monday, August 14, 2023 12:52 PM
**To:** Dionne, Christophe E CIV (USA) <christophe.e.dionne.civ@us.navy.mil>
**Subject:** Follow up

Chris,

This email is a follow up to our verbal conversation today in regards to concerning behavior in the office space.

Summary:  It was brought to my attention that you displayed concerning behavior in the office space.  You verbally made a couple of comments that were filled with profanity.  I ask that you be consciously aware of your surrounding of other people in the vicinity of your work space and the language you say out loud and when you have headphone on.

Very Respectfully,

CDR Frank Ryan
Director, Strategy & Analysis Department (N5)
Navy Recruiting Command
Office: 901-874-9210 I Mobile: 901-208-5319



CONFIDENTIALITY NOTICE:  This email message and any attachments are intended only for the person or entity to which it is addressed, and may contain confidential or privileged protected from disclosure under the Freedom of Information Act, 5 USC 552.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.  If you are the intended recipient, but do not wish to receive communications through this medium, please advise the sender immediately.

| Date | Document | Comment |
|---|---|---|
| 26-Jun-19 | MFR | Alleged Parring Lot Incident |
| 4-Oct-19 | Voluntary Sworn Statement | Alleged Hallway Incident |
| 7-Oct-19 | Security Incident Report | Never disclosed IAW 5 7513 |
| 8-Oct-19 | MFR | Suspension of Access to Classified Material |
| 9-Oct-19 | MEMORANDUM | NOTICE OF PROPOSED INDEFINITE SUSPENSION |
| 10-Oct-19 | JPAS Entry | Access to Classified Material |
| 10-Oct-19 | Letter | Written Response |
| 15-Oct-19 | Email | NETC OGC to NETC LER request case information |
| 23-Oct-23 | Email | NETC OGC to Dr. Sullivan request for case information |
| 24-Oct-19 | MFR | Climes that I failed to repudiate the reasons for suspension |
| 31-Oct-19 | Letter | DECISION OF PROPOSED INDEFINITE SUSPENSION |
| 5-Nov-19 | MFR | Appeal Decision (after decision to suspend) |
| 23-Jul-20 | Letter | Administrative Oversight on NRC |
| 2-Feb-21 | Email | Security Clearance reinstated without incident |
| 15-Mar-21 | FOIA Response | OGC FOIA Response stating that NO Responsive records were found for suspension memorandum |

| 23-Nov-22 | Email | Asst. Force Judge Advocate, identified the 7 Oct 2019 Security Incident Report as the materiel used |
| | | to suspend my access to classified material. |
| 14-Apr-23 | Email | Dr. Sullivan's response Including statement IRT investigations and verifications |
| 6-Jun-23 | FOIA Response | FOIA indicated that there were no responsive documents to alleged investigations and verifications |
| | | mentioned by Dr. Sullivan |
| 16-Aug-23 | Email | Department Head accuses me of using profanity while wearing headset |

Enclosure (24)

## POINTS OF CONTACT

Commander, Navy Recruiting Command
Rear Admiral Alexis T. Walker
Email: alexis.t.walker.mil@us.navy.mil
Phone: 901-874-9018

Executive Director, Navy Recruiting Command
Dr. Kevin Sullivan
Email: kevin.sullivan10.civ@us.navy.mil
Phone: 901-874-9005

Naval Education and Training Command, Office of General Counsel
Ms. Carol Lynch, Counsel
Email: carol.m.lynch1.civ@us.navy.mil
Phone: 850-452-4828

Naval Education and Training Command, Assistant Counsel

Mr. Marcus Lawrence III
Email: marcus.lawrence.civ@us.navy.mil
Phone: 850-698-8085

Enclosure (25)